## OKLAHOMA NATURAL GAS CO. v. JOPLING.

No. 15663—Opinion Filed Nov. 10, 1925.

Rehearing Denied June 8, 1926.

(Syllabus.)

1. **Gas—Cause of Escaping Gas—Conflicting Theories—Circumstantial Evidence—Province of Jury.**

Where there is more than one theory as to the cause of gas being permitted to pass through a certain channel or opening in gas pipe connections, and the different theories are supported by circumstantial evidence, the jury may then adopt such theory as in their judgment is the more plausible, and which is reasonably supported by the evidence.

2. **Same—Judgment for Damages from Explosion Sustained.**

Record examined, and held, to support the judgment appealed from.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by Virginia B. Jopling against the Oklahoma Natural Gas Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Humphrey & Campbell, for plaintiff in error.

Rogers & Jones (Remington Rogers, Ed. L. Jones, Merwin Haven, and A. C. Saunders, of counsel), for defendant in error.

LESTER, J. The parties to this action will be referred to as they appeared in the court below.

This action was brought by Virginia B. Jopling against the Oklahoma Natural Gas Company, a corporation, Claud J. Bowman, A. H. Robertson, a copartnership, J. M. Reed, Pearl Rusmisel, and the city of Tulsa, defendants. The defendants Bowman and Robertson made no appearances in the case.

The Oklahoma Natural Gas Company answered the petition of the plaintiff, and defendants J. M. Reed and Pearl Rusmisel also answered the said petition. The city of Tulsa appeared and filed a motion to make plaintiff's petition more definite and certain. Said motion was sustained, but the record does not show that the plaintiff ever complied with this order, and the city of Tulsa filed no further pleading.

The plaintiff for her cause of action stated and alleged that the defendants carelessly permitted gas to escape through the pipe lines which entered the residence adjoining plaintiff's premises, and that by reason of the gas escaping, it had accumulated in large quantities and said gas was ignited, and thereby caused an explosion of tremendous force, greatly damaging the residence, garage and personal property of the plaintiff and also causing injury to the person and body of the plaintiff. The cause was tried to a jury, and a verdict was rendered in favor of the plaintiff and against the defendant Oklahoma Natural Gas Company for the sum of $2,659.78 for injuries to the property of the plaintiff only.

The Oklahoma Natural Gas Company filed its motion for new trial, which was by the court overruled, and it prosecutes this appeal to reverse the judgment of the district court.

There are numerous assignments of error contained in the plaintiff's petition in error. As we view the case, the same is to be determined by the sufficiency of the evidence upon the part of the plaintiff as to whether the evidence justified the jury in rendering its verdict against the defendant. The defendants J. M. Reed and Pearl Rusmisel were the owners of a certain lot located in the 1700 block on East Thirteenth street in the city of Tulsa. On this property, the defendants J. M. Reed and Pearl Rusmisel constructed a dwelling house during the fall of 1921, and had certain plumbing and piping installed during the month of October, 1921. The plumbing was installed by Bowman and Robertson, defendants in this case. At the time of the explosion the house had never been occupied.

The defendants Bowman and Robertson installed a service line on the premises of the defendants Reed and Rusmisel, extending from the stopcock or valve in the pipe line belonging to the defendant Oklahoma Natural Gas Company to the residence of Reed and Rusmisel.

The plaintiff in this case owned the house on the east of the Reed and Rusmisel house, with one vacant lot between the two houses, both of which fronted north. The plaintiff's home was occupied by herself and family.

The pipe line of the Oklahoma Natural Gas Company to which the service line above mentioned was connected was a two-inch line which ran along the south side of the street. During the early part of February, 1922, the defendant Oklahoma Natural Gas Company decided to install a five-inch pipe line instead of the two-inch line which it already had on this street. It laid the five-inch pipe line along the north side of Thir-

teenth street. There were about five houses in the 1700 block to which it was necessary to make connections for service pipes. The defendant gas company had its employes engaged in doing this work during the early part of February, 1922. After the five-inch pipe line was laid along the north side of the street, the gas company proceeded to turn off the gas at the different service lines from the two-inch line and then to connect each of the service lines with a new service line from the five-inch line which came from the north side of the street. In front of the Reed-Rusmisel house the gas company had installed a stopcock or gate valve in its original two-inch line, located about two feet underneath the ground, and Bowman & Robertson had connected the service line of the defendant Reed with this stopcock. This was done some time during the month of October, 1921. It was a question as to whether Bowman & Robertson put a plug or cap on the end of this line. In any event there was no cap or plug there when the explosion occurred.

In February, when the Oklahoma Natural Gas Company laid its new line, it also laid a lateral line to the curb box, which was on the south side of the street in front of the Reed and Rusmisel premises. This was done by a crew consisting of about ten men under the supervision and direction of J. M. Gillian, a foreman for the Oklahoma Natural Gas Company. During the course of the operation of changing the gas connection from the two-inch line to the five-inch line, the gas company turned the gas off and on to each of the different houses in the 1700 block on East Thirteenth street several times, and it appears that the final connection between the five-inch line which led across the premises of the defendants Reed and Rusmisel to the point under the Reed-Rusmisel house was not made by the defendants Reed and Rusmisel, or their plumber, but was made by the defendant gas company. J. M. Gillian, foreman for the Oklahoma Natural Gas Company, testified in part as follows:

"Q. Tell the jury, please, what was done in the finishing of that job. A. The Reed house job?

"Q. Yes, sir. A. We ran our service across from the five-inch line, across the north side to the south side, we hooked the line up that goes into the house and the new line we just completed so we could cut the old line off, cut the service line off the two-inch so we could take it up and give the service on the new line.

"Q. Tell us, please, how you finished your part of the service line? A. We laid it across the street and this service in particular where we were talking about was hooked up to the two-inch line. It was necessary to connect the inch and a quarter line last that goes into the house, to hook it up to our service across the street so we could take it out.

"Q. As I understand, the Reed house had inch and a quarter line running out to the two-inch line? A. Yes, sir.

"Q. And when you put in that service line to your five-inch line, you disconnected his line? A. We cut it off the two-inch.

"Q. And slightly moved it so it would fit the end of your new service? A. We laid our service, the new service laid was about six or eight inches deeper than the house line, that is the service line from the curb box in."

One of the men who was working under Mr. Gillian was one G. E. Peterson, and Mr. Peterson testified that it was some time in the afternoon of the 13th day of February, 1922, that Mr. Gillian came over from the work on Thirteenth street and asked Peterson if he had enough men to go over and help in the services on Thirteenth street. This particular witness testified that he was the one that connected up the coupling between the new pipe line laid by the defendant gas company and the service line to the Reed and Rusmisel house. Peterson said that he arrived there with his men at about 3 o'clock in the afternoon of February 13th, and the men quit at about 5 o'clock. It appears that this witness was the last one to leave.

It also appears that after the defendants Bowman and Robertson had installed the plumbing no meter was ever installed at the Reed-Rusmisel residence. It appears that it was the custom never to turn the gas on at the stopcock until a meter was installed, and that the Oklahoma Natural Gas Company, defendant, had never received an order to turn the gas on at the Reed-Rusmisel house.

On Thursday, February 23rd, the witness Mrs. W. B. Eddy went into the Reed house in company with an agent from the Adams-Reddin Real Estate Company, and the witness testified that she smelled gas in the basement. Her testimony is in part as follows:

"A. Well, it was on Thursday before the explosion on Sunday, about the 23rd of February. I was in it, an agent from the Adams-Reddin Real Estate Company. We went in to see this house, went into the basement: the basement was full of gas and we could

hardly stay in the basement long enough to see how large it was on account of the gas. Q. This, you say, was on Thursday before the explosion occurred? A. Yes, sir; before the explosion."

It appears that the explosion occurred on the 26th day of February, 1922, that a party had entered the Reed-Rusmisel building; struck a match and the gas ignited, and that the explosion occurred, practically destroying the Reed-Rusmisel house and injuring the plaintiff's home, and causing further injury to the personal property of the plaintiff within her home, and also destroying the plaintiff's garage.

It further appears from the testimony that the portion of the service line which entered the premises of the Reed and Rusmisel house, and which is referred to by the witnesses as being a "riser", was uncapped at the time of the explosion, which permitted gas to escape from the line on the premises. The employes of the Oklahoma Natural Gas Company testified that when they finished the work of installing the new five-inch pipe line and connecting the same with the stopcock, the stopcock at the curb was in good condition and was completely closed by the servants of the defendant, and they used every degree of care and caution in relation to their services, and that if the gas escaped through the stopcock valve, it was without their fault or neglect, and they never authorized any one to turn the gas on at said point; and that if the said gas was escaping through the stopcock or valve, it was wholly without their fault or consent.

At the close of all the evidence upon the part of the plaintiff, the defendant Oklahoma Natural Gas Company filed its demurrer to the evidence and urged to the court that it was insufficient to permit a recovery on the part of the plaintiff. The court thereupon overruled the motion of defendant for a directed verdict in its favor, to which the defendant duly excepted.

From a careful examination of the entire record we are of the opinion that the sufficiency of the evidence upon the part of the plaintiff to entitle a recovery is the most serious question presented. The evidence clearly shows that the explosion was caused in the Reed-Rusmisel residence by the presence of a large quantity of gas. It is clearly shown that the gas was coming through the stopcock or valve at the time of the explosion. It is also shown that the gas is turned off at the stopcock by an instrument used only for that purpose. It is further shown that long after the plumbing was

done by the firm of Bowman and Robertson, the gas company installed a five-inch line on the north side of the street in front of the residence where the explosion occurred; that the five-inch line was being installed for the purpose of carrying gas to the customers along said street in lieu of the two-inch line which was being used for that purpose at the time the plumbers for Reed and Rusmisel installed the plumbing, and that when the new line was being installed a crew of workmen, employed by the gas company, were engaged in cutting off and turning on the gas from the residences along the block where the new line was being installed. There is not a scintilla of proof that the plumbers for Reed and Rusmisel or any person acting for Reed and Rusmisel had anything to do with the stopcock or valve after October, 1921. The instrument used for turning the gas on and off was a large key about five feet in length and having a special fork or prong at the end of it. And while the employes of the defendant gas company testified that the gas was fully turned off by them when they finished the work of connecting the pipes at the stopcock of the new line, yet it was found that gas was going through the stopcock at the time of the explosion. It was about ten days or two weeks after the workmen completed the new line that the explosion occurred. The cause of the gas going through the stopcock or valve at the curb in front of the residence where the explosion occurred could only be accounted for through the inadvertence and failure of the employes of the gas company to turn the gas off at the time they were changing the two-inch line to the five-inch line; or the act of some malevolent person who willfully turned the gas on. As shown by the evidence, the gas meter had not been installed at the time of the explosion, and the employes of the gas company testified that they had never received an order to turn the gas on at the said residence, and that it was the custom not to turn the gas on until a meter had been installed.

The jury, after hearing all the evidence in the case as to every fact and circumstance connected therewith, evidently adopted the theory that when the gas was being turned off and on at the various residences along where the new five-inch line was being installed, the workmen for the gas company overlooked the fact that the residence of Reed and Rusmisel was not then occupied, and the gas was inadvertently left turned on, and entered the pipe leading into the residence where the explosion took place.

The subject of escaping gas is discussed in 28 C. J. page 600, section 69, in the following language:

"The application of the rule of res ipsa loquitur depends upon the facts and circumstances of each individual case. While in some cases the courts have applied the doctrine of res ipsa loquitur where there was no proof of negligence other than a mere leak or explosion, it has generally been held that the mere fact of a leak or explosion does not raise a presumption of negligence or make out a prima facie case against the company, but that plaintiff must go a step further, and prove facts from which it can be legitimately inferred that either in construction, repair, or operation the company had omitted that reasonable care and caution which it should have observed. On the other hand, in the absence of an intervening agency which negatives the idea of negligence on the part of the gas company, prima facie proof of negligence is made by showing a break or leak in a main or pipe and the consequent escape of gas operating proximately to cause the loss, where the cause or instrumentality of the accident is under defendant's control, where such an accident does not ordinarily occur if the proper precautions are taken, or where the situation excludes everything but the negligence of defendant. This is not to be understood as meaning that such facts prove negligence as a matter of law, but that the jury is at liberty to draw the inference from them. The explosion being proved and its origin having been established as escaping gas, the burden shifts to defendant to show freedom from negligence. The doctrine of res ipsa loquitur is, however, subject to well-settled limitations, and does not apply where the injury may have been caused by escape of gas from pipes and appliances not under the control of defendant, or where there is no evidence to show the cause of the explosion."

It is well settled in Oklahoma that a higher degree of care and vigilance is required in dealing with a dangerous agency such as gas than in the ordinary affairs of life and business. In the case of the Oklahoma Gas & Electric Company et al. v. Oklahoma Railway Co., 77 Okla. 290, 188 Pac. 331, the court said in part:

"A higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life and business, which involve little or no risk of injury to persons or property, and in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent damage from the escape of gas commensurate with the danger which it is its duty to avoid, and if it fails to exercise this degree of care,

and injury results therefrom, the company is liable, provided the person suffering the injury, either in person or in property, is free from contributory negligence. While no absolute standard of duty can be prescribed, every reasonable precaution suggested by experience and the known danger of the escape of gas ought to be taken. 12 R. C. L. sec. 46, ·p. 905; Belleview G. & O. Co. v. Carr, 61 Okla. 290, 161 Pac. 203; Bradley v. Shreveport Gas, Elec. L. & P. Co., 142 La. 49, 76 South. 230."

We do not think the court committed error in overruling defendant's demurrer to the evidence. In our opinion, where there is more than one theory as to the cause of gas passing through a certain channel and the different theories are supported by circumstantial evidence, the jury may then adopt such theory as in their judgment is more plausible, provided the same is reasonably supported by the evidence.

The defendant further urges that it was not shown that the escaping of gas through its line and into the lines of the pipes that entered the residence where the explosion occurred was the proximate cause of the injury to the plaintiff's property.

As shown by the evidence, a party entered the Reed-Rusmisel residence, who thereupon struck a match and an explosion immediately occurred which wrecked the property of the plaintiff. It was then discovered that the stopcock located in front of the building where the explosion occurred was open and gas was passing through the same; and when the stopcock was closed, that the gas which was burning at the end of the riser under the porch, where the explosion occurred, at once ceased burning.

12 R. C. L. p. 912, sec. 53, has the following to say in reference to the proximate cause on account of the acts of third persons:

"To render a gas company liable for negligence, it is a settled rule that the negligent act must be the proximate cause of the injury. The proximate cause, however, is not always that which is nearest the time or place to the injury; it is the superior or controlling agency as contradistinguished from those causes which are merely incidental or subsidiary to such controlling or principal cause. The primary cause may operate through successive instruments. An independent wrongful act, to constitute the proximate cause by displacing the original primary cause, must be so disconnected in time and nature as to make it plain that the damage occasioned was in no way a natural or probable consequence of the original wrongful act or omission. If the negligent act or omission is one which the company

ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, then it is liable for any injury proximately resulting therefrom although it might not have foreseen the particular injury which did happen. Applying these principles, it has been held that if through the negligence of the company gas escapes into a sewer, and in its course through the sewer takes up other gases which are noxious and carries them into a house, causing injury thereby, the company's negligence is as much the proximate cause of the injury as if their own gas had occasioned it. And there are many decisions to the effect that a gas company is not relieved from liability for an injury caused by gas escaping from its pipes although the injury is due to the concurrent negligence of the company and a third person not in privity with the plaintiff. But where the escape of gas is due to acts of which the company had no notice, committed by third persons over whom it had no control, it is clear that there is no liability on its part. It has been declared that the test of proximate cause is whether the facts between the negligent act and the final result constitute a succession of events so linked together that they become a natural whole; ordinarily it is a question for the jury, to be determined as a fact from the particular situation."

"Great ability and research have been expended in attempting to arrive at and determine upon some general definition of the terms 'proximate cause' and 'remote cause,' and establish a rule and a line of demarcation between the two. Such efforts appear to have been partially successful. Both have received various definitions, though differently worded, amounting to practically the same thing; but in almost every instance where they have been attempted to be applied, their applicability seems to have been determined by the peculiar circumstances of the case under consideration. Webster defines 'proximate cause' as that which immediately precedes and produces the effect, as distinguished from the remote, mediate, or predisposing cause. Anderson's Law Dictionary defines it as 'the nearest, the immediate, the direct cause; the efficient cause; the cause that sets another or other causes in operation; the dominant cause.' With these definitions in view, when two causes unite to produce the loss, the question still remains, which was the proximate cause? Blythe v. Denver & R. G. Ry. Co., 25 Pac. 702, 703, 15 Colo. 333, 11 L. R. A. 615, 22 Am. St. Rep. 403."

We think that the facts in this case come within the doctrine above expressed.

The defendant urges error because of the court's refusal to submit instructions Nos. 1, 2, and 3, offered by the defendant, and in each of these instructions requested that a verdict be directed in its favor. In our judgment the defendant was not entitled to the instructions offered. We have carefully examined other instructions offered by the defendant, and find that the court adequately and fairly submitted the issues covered in the instructions offered by the defendant.

We also find that the instructions given by the court, to which the defendant excepted, were fair and covered all the issues which it was necessary to submit to the jury.

The defendant also complains that numerous other defendants were joined as parties defendants in this action; that the plaintiff pressed her case against the defendant Oklahoma Natural Gas Company only. If this be true, the court cannot say what motive moved the plaintiff to pursue this course. However, all joint wrongdoers are liable in tort. It having been shown that the gas was passing through the stopcock at the time of the explosion, and it further appearing that the defendants Reed and Rusmisel had never ordered the gas turned on at their house, the jury very likely took the view that the defendants Reed and Rusmisel could not anticipate the presence of gas, and the jury therefore discharged them from liability.

We have carefully examined the record, and find that the same supports the judgment. Judgment affirmed.

NICHOLSON, C. J., BRANSON, V. C. J., and PHELPS, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 28 C. J. pp. 602, 603, § 72; anno. on liability of gas companies for escape of gas, see note in 25 A. L. R. 290; 12 R. C. L. p. 912; 2 R. C. L. Supp. p. 1510; 5 R. C. L. Supp. p. 661. (2) 4 C. J. p. 1129, § 3122.