## GUILFORD et al. v. FOSTER & DAVIS.

No. 16913.　Opinion Filed Aug. 2, 1927.

Rehearing Denied June 19, 1928.

(Syllabus.)

**1. Negligence—Sufficiency of Proof of Primary Negligence.**

Where, in an action founded on negligence, and specific acts of negligence are alleged, the plaintiff's evidence is such as will fairly tend to prove such allegations, primary negligence is proved, and it is error to sustain a demurrer to the evidence.

**2. Same—Rule of Res Ipsa Loquitur Applicable to Case in Part.**

Where, in an action founded on negligence, a part of the plaintiff's case is such that the rule of res ipsa loquitur is applicable thereto, the rule will be applied to that part, though other parts of plaintiff's case may be capable of proof by direct evidence of specific acts of negligence alleged.

Commissioners' Opinion, Division No. 2.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by Duke Guilford et al. against Foster & Davis, Incorporated. Judgment for defendant, and plaintiff brings error. Reversed.

H. H. Montgomery and Shell S. Bassett, for plaintiffs in error.

Burford. Miley, Hoffman & Burford and Campbell & Ray, for defendant in error.

DIFFENDAFFER, C. This action was brought to recover damages for the wrongful death of Mrs. Elizabeth Guilford, the wife of Duke Guilford. and sister of plaintiffs, Josey Huelsebush, Otto Ebbert, and Mary Catherine Noser, alleged to have been caused by the negligence of defendant.

The petition, in substance, after setting out the relationship of plaintiffs to deceased, alleges that on the 9th day of May, 1923, deceased. with certain other persons, including her husband, went to a gasoline plant owned and operated by defendant, and that there one Jeffries. an employee and agent of defendant in charge of the plant. invited Mrs. Elizabeth Guilford and other members of the party to go through and inspect said plant. and placed said parties in charge of

one Dunifee, who was an employee of said company, and instructed him to conduct the party through the plant; and in the course of such trip they were conducted into a room, known as the accumulator room, where gasoline was kept in certain tanks under high pressure; that while in the room Dunifee opened certain valves in one of the tanks, thereby allowing large quantities of vaporized gasoline to escape from the tank into the room. This said vaporized gasoline was, and is, a highly inflammable substance, and a dangerous explosive. The petition alleges, further, that the acts of Dunifee, in so opening said valve, allowing the vaporized gasoline to escape into the room, without any adequate provision for its removal therefrom, was carelessness and negligence, and done wthout due care or regard for the safety of plaintiff's decedent, and without knowledge on her part that the vaporized gasoline was a dangerous and explosive substance; that while Mrs. Guilford and the remainder of the party were standing in said room, Dunifee walked around behind one of the tanks in the room, out of sight of Mrs. Guilford and the other members of the party; that immediately thereafter there was an explosion in said room, and that the vaporized gasoline in the room caught fire to the clothing of Mrs. Guilford, causing severe burns upon her person, from which injury she died on the 12th day of May, 1923, after suffering great pain and agony from such burns; that no administrator of her estate has been appointed: that Mrs. Guilford was of the age of 49 years, and prior to her injury she was in good health; that she was a woman of good business experience, co-operating with, and assisting, her husband in his business affairs, and assisting and working with him in his business; and prays for damages in the sum of $50,544.26. which includes $544.26 funeral expenses and hospital fees.

The answer of defendant consists of a general denial, and further specifically denied that either Jeffries or Dunifee invited the party to inspect the plant, or any part thereof, and specifically denied the right of authority of Jeffries or Dunifee to invite the parties to inspect the plant; and alleged that, if the party did visit, inspect, or enter the plant or the premises, such visit, inspection, or entry was without the permission, authority, or invitation of defendant, and was against its will, orders, and rules governing the management of the plant; and, for a further defense, plead contributory negligence; and, as a further defense, that the said Mrs. Elizabeth Guilford was a

woman of mature years, familiar with and acquainted with the volatile and inflammable nature of gas and gasoline; that she knew and appreciated the danger, and in addition thereto, that she was advised and informed, on said 9th day of May, 1923, and prior to the visit, of the danger that might arise if fire from any cause should become present, and that she voluntarily incurred the risk when she entered the plant. The case was tried to a jury, and at the close of plaintiff's evidence, defendant demurred thereto, and the court sustained the demurrer and announced his ruling in the following language:

"Gentlemen, I have read the authorities you have submitted to me, and while there are cases that hold both ways, I am constrained to believe that the rule of res ipsa loquitur does not apply in this case, and that the plaintiffs have failed to prove specific acts of negligence, and the demurrer to the evidence will be sustained."

The plaintiff assigns five specifications of error, namely: Error in overruling motion for new trial; error in sustaining the demurrer to the evidence and instructing the jury to return a verdict for defendant; error in holding, as a matter of law, that plaintiff's evidence was insufficient to make a prima facie case; error in holding, as a matter of law, that the rule of res ipsa loquitur had no application to the facts in the case, upon the pleadings and evidence; and error in refusing to admit certain evidence offered by plaintiff, and permitting defendant in cross-examination to bring out certain evidence of facts, which were not relevant or material.

Plaintiffs in their brief present two propositions: First, that the court erred in holding that the plaintiffs had failed to make out a case, without invoking the operation of the rule of res ipsa loquitur. Second, that the rule of res ipsa loquitur should have been applied to this case by the court.

The first proposition requires an examination of the evidence. The facts, as disclosed by the evidence, are, substantially, that on the 9th day of May, 1923, plaintiff Guilford and his wife were visiting with their cousin, James E. Jones of Cleveland. Okla.; that prior to that time they had lived on a farm in Missouri for a few years; and prior to that time he had conducted a grocery store in St. Louis for a number of years; that on May 9, 1923, Mr. Guilford and his wife, Mr. Jones and his wife and his daughter and young sister, about 5:30 o'clock p. m., drove an automobile from the town of Cleveland to the plant operated by

defendant; that when they started from Cleveland they intended to go to another place. Mr. Jones, in whose automobile they were riding, decided, after they had started, that he would go to the plant of defendant, for the purpose of seeing one Mr. Smith, who was the superintendent, on some business connected with some 'life insurance' prospects; that when they arrived at the plant, Mr. Smith was away; that they found Mr. Jeffries in the office at or near the entrance of the enclosure surrounding the plant; that Mr. Jeffries asked them if they wanted to go through the plant; that Mr. Jones replied that Mr. Guilford and his wife were new in the oil fields and might want to go through; that Mr. Dunifee was some distance away on the outside of the enclosure playing ball with some other persons; that Mr. Jeffries called Dunifee and directed him to show the party through the plant; that Dunifee then conducted the party through the plant, first going to the accumulator room, and there advised the party that this was a room where the product was finished; that he would show them through the other parts of the plant first and bring them back to this room afterwards; that after inspecting the engine room and boiler room, Dunifee then conducted the party back to the accumulator room where the tanks containing the gasoline were located; that the floor of the room, in which the tanks were, was a plain concrete floor with a little trough something like a foot wide; that Dunifee entered the room first, followed by Guilford; that Mrs. Guilford next entered the room; that the little girls entered the room and went in front of the first tank; that on each of the tanks there was a glass gauge, at the bottom of which was a valve or pet cock: that while the party was in the room, Dunifee turned a valve on the first tank; that when he opened this valve, the pressure in the tank appeared to be very high, and as the gasoline escaped it formed a froth or ice on the floor; that the gasoline fumes filled the air in the room to the extent that the vapor could be seen; that the little girls started to play with the particles of ice formed by the escaping gasoline, and that Mrs. Guilford inquired of Dunifee if it was not dangerous to permit them so to do; that he informed them that it was not dangerous; that Dunifee then closed the valve and went back behind one of the tanks out of his sight; that while he was behind this tank a noise, described by one of the witnesses as a "sizzle," and by one of the other witnesses as a noise similar to that made by the escaping gas at the first tank, was

heard. Other witnesses describe the noise as being similar to that made by the escaping gas at the first tank, and also stated that they heard a hammering or knocking noise, and that immediately thereafter the explosion occurred; that the clothing on most everyone in the room caught fire; that after the explosion Guilford and Jones first put the fire out on the two little girls, and that Mrs. Guilford was lying on the ground outside of the room with her clothing on fire; that Jones and Guilford then extinguished the fire on Mrs. Guilford.; that Mrs. Guilford was badly burned, and was taken to one of the houses on the premises, and a doctor called, and she was taken from there to the hospital at Tulsa, where she died on the morning of the 12th day of May. There was no evidence whatever as to what ignited the gas.

At the trial, there was a stipulation filed, signed by the attorneys of both plaintiffs and defendant, that Dr. H. D. Murdock, of Tulsa, who was the attending physician of Mrs. Guilford at her death, would, if placed upon the witness stand by the plaintiffs, testify that the death of said Mrs. Guilford was due to burns received by her in an explosion at the Pep Gasoline Plant in Osage county, Okla., on the 9th day of May, 1923, and that the stipulation was entered into for the purpose of obviating the necessity of placing Dr. Murdock on the stand to obtain such testimony.

There is no direct evidence as to just what position Jeffries held. No direct proof was offered on that point. One of the contentions in this case arises on the question of whether or not Jeffries was shown to be an agent or employee of defendant. It is contended by plaintiffs that the defendant's attorney, in his opening statement before the jury, admitted .that both Jeffries and Dunifee were employees of defendant. Mr. Campbell, attorney for the defendant, in his opening statement. a number of times referred to both Jeffries and Dunifee as employees of the company. This statement standing alone would hardly be sufficient to prove the connection of Jeffries with the company as an employee, but when taken in connection with a statement introduced by defendants themselves, as a part of the cross-examination of the witness, Jones, we think the evidence was sufficient to take this question to the jury. Especially is this true when it was apparently conceded by all the parties at the trial that Smith was the superintendent, and that Jeffries and Dunifee were both employees of the company.

The question then arises as to whether primary negligence was shown sufficiently to take the case to the jury on the question of defendant's negligence. It is urged by defendant that, under the pleadings, it was incumbent upon plaintiffs to prove, not only that the company was negligent in permitting the gas to escape into the room, but, also, that the negligence of the company in some way caused the gas to be ignited, and that there being no evidence to in any way connect the defendant with the fire or spark that ignited the gas in the room, plaintiffs' case must for this reason fail. In other words, defendant contends that the proximate cause of the injury was not that gas was negligently permitted to escape in the room, but that the ignition of the gas was the proximate cause of the injury.

We think that the rule in such cases has been established in this state, and that this court in the case of Oklahoma Natural Gas Co. v. Jopling, 121 Okla. 10, 247 Pac. 69, has laid down a rule that may well be applied in this case. In that case an explosion occurred in a building on the adjoining lot to that of the plaintiff, which was caused by gas escaping from the main in the street through a service pipe, which had been laid by the gas company and a cut-off apparently allowed to remain open, so that gas filled the basement under the building on the adjoining lot to that of plaintiff, and a third party going in the basement struck a match, and an explosion immediately occurred, which wrecked the property of the plaintiff. It was there contended by the gas company, that the escaping of the gas through its line and into the line of the pipe entering the residence where the explosion occurred, was not the proximate cause of the damage to the plaintiff's property. This court, in that case, quoted with approval the following from 12 R. C. L. 912, sec. 53:

"To render a gas company liable for negligence it is a settled rule that the negligent act must be the proximate cause of the injury. The proximate cause, however, is not always that which is nearest in time or place to the injury; it is the superior or controlling agency as contradistinguished from those causes which are merely incidental or subsidiary to such controlling or principal cause. The primary cause may be the proximate cause of a particular injury, though it may operate through successive instruments. An independent wrongful act, to constitute the proximate cause, by displacing the original primary cause, must be so disconnected in time and nature as to make it plain that the damage occasioned was in no way a natural or probable consequence of the original wrongful act or omission. If the negligent act or omission is one which the company ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, then it is liable for any injury proximately resulting therefrom, although it might not have foreseen the particular injury which did happen. Applying these principles, it has been held that if through the negligence of the company gas escapes into a sewer, and in its course through the sewer takes up other gases which are noxious and carries them into a house causing injury thereby, the company's negligence is as much the proximate cause of the injury as if their own gas had occasioned it. And there are many decisions to the effect that a gas company is not relieved from liability for an injury caused by gas escaping from its pipes, although the injury is due to the concurrent negligence of the company and a third person not in privity with the plaintiff. But where the escape of gas is due to acts of which the company had no notice, committed by third persons over whom it had no control, it is clear that there is no liability on its part. It has been declared that the test of proximate cause is whether the facts between the negligent act and the final result constitute a succession of events so linked together that they become a natural whole; ordinarily, it is a question for the jury, to be determined as a fact from the particular situation."

In Blythe v. Denver & R. G. Ry. Co., 25 Pac. 702-703. 15 Colo. 333, 11 L. R. A. 615, 22 Am. St. Rep. 403, it is said:

"Great ability and research have been expended in attempting to arrive at and determine upon some general definition of the terms 'proximate' and 'remote' causes and establish a rule and a line of demarcation between the two. Such efforts appear to have been partially successful. Both have received various definitions. though differently worded, amounting to practically the same thing. But in almost every instance where they have been attempted to be applied, their applicability seems to have been determined by the peculiar circumstances of the case under consideration. Webster defines 'proximate cause' as ' that which immediately precedes and produces the effect. as distinguished from the remote. mediate. or predisposing cause. Anderson's Law Dictionary: 'The nearest. the immediate. the direct cause: the efficient cause: the cause that sets another or other causes in operation: the dominant cause.' With these definitions in view. when two causes unite to produce the loss. the question still remains, Which was the proximate cause?"

While the facts in that case are not the same as in the instant case. yet. we think the rule as there stated would apply in this

case. In that case, it was known how the gas became ignited. The court there held that although the party who struck the match in the gas filled basement was in no way connected with the gas company, the proximate cause of the injury to the property was the negligent act of the company in permitting its gas to escape in the basement of the adjoining building. We think that the jury might well have found that the proximate cause of the explosion was the act of the employee of the defendant company in opening the valves and permitting the gas to escape into the room. It would have made no difference, under the rule, if a third party should have ignited the gas, or, as here, if it was not shown how the gas was ignited.

The evidence in this case seems clear, that no one of the party being shown through the plant could have ignited the gas, or, at least, that question should have been submitted to the jury for its determination. It does not appear how the rule could have been different in Oklahoma Natural Gas Co. v. Jopling, supra, if it had been unknown how the gas in the basement became ignited.

In Oklahoma Natural Gas Co. v. Jopling, supra, this court said:

"It is well settled in Oklahoma that a higher degree of care * * * is required in dealing with a dangerous agency such as gas, than in the ordinary affairs of life and business."

To the same effect is the rule stated in 28 Corpus Juris, 591, where it is said:

"* * * In view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent damage commensurate to the danger which it is its duty to avoid, even though this degree of care may extend the requirement in that behalf slightly beyond the general rule with respect to the exercise of ordinary care to avoid such dangers only as are to be reasonably anticipated in the conduct of a particular business."

This rule applies both while the gas remains on the premises of the manufacturer, and while it is being carried through its pipes to the consumer. We think the plaintiff's evidence was sufficient to show primary negligence, and it was error to sustain a demurrer thereto.

With reference to the second proposition, that the rule of res ipsa loquitur should be applied in this case, it is urged by defendant:

(a) That plaintiffs, by alleging specific acts of negligence as the proximate cause of the injury, themselves took any question of res ipsa loquitur out of the case, and

(b) Even if the pleadings had not precluded the application of the doctrine, the facts proven were not sufficient to permit of its application.

On the first contention defendant cites Chicago, R. I. & P. Ry. Co. v. McIntire, 29 Okla. 797, 119 Pac. 1008; Missouri, O. & G. Ry. Co. v. Adams, 52 Okla. 557, 153 Pac. 200; and Carter Oil Co. v. Independent Torpedo Co., 107 Okla. 209, 232 Pac. 419, to support its contention and claims that by these cases such rule has been established in Oklahoma.

We have examined the cases cited, and do not think that either of the first two support defendant's claim, as the doctrine of res ipsa loquitur was not involved in those cases. All they hold is that, where a plaintiff alleges certain specific acts of negligence, he cannot present or prove other specific acts.

We do not think Carter Oil Co. v. Independent Torpedo Co., supra, is in point on the question. The reason given there for denying the application of the rule was, that there were several instrumentalities used in doing the thing out of which the accident arose, some of which were under the control of defendant, and others of which were under the control of the complaining party, and that the accident might reasonably have occurred by reason of defect in the instrumentalities under plaintiff's control.

Defendant also cites Garvey v. Coleman Lamp Co., 213 Pac. 823, and Byland v. Dupont Power Co., 144 Pac. 251, both from the Supreme Court of Kansas. In the latter case, the Kansas court held:

"Where in an action founded upon negligence the plaintiff alleges specifically the negligent acts of the defendant upon which he relies to recover, he must prove the negligence alleged, and will not be allowed to make a prima facie case relying upon the doctrine of res ipsa loquitur."

The rule contended for by defendant seems well established in Kansas.

In Selby v. Osage Torpedo Co., 112 Okla. 303, 241 Pac. 130, a case growing out of an explosion of nitroglycerine, this court held the rule of res ipsa loquitur to apply, and said:

"* * * The explosion, and injury as a result, being proved, the presumption of negligence is indulged, and the burden, showing otherwise, shifts to the defendant."

In that case, plaintiff pleaded certain acts of negligence, but it was not shown that these acts caused the ignition of the nitro-

glycerine. This court held that the rule of res ipsa loquitur applied in that case.

Defendant contends that it is not enough to show that the presence of the gas in the room was due to its negligence, but that it must also be shown that the ignition of the gas was also due to its negligence, before plaintiffs could recover, and that under the pleadings it is incumbent upon plaintiffs to prove specific acts of negligence with reference to both elements.

If a part of plaintiffs' case be based upon specific acts of negligence, which are known and capable of proof by direct evidence, and a part of their case is such as would come within the rule of res ipsa loquitur, we see no reason why plaintiffs should be deprived of the benefit of the rule as to the latter part by pleading specific acts of negligence as to the first part.

We are of the opinion that, as to the cause of the ignition of the gas. this case comes within the rule in Selby v. Osage Torpedo Co., supra, and that the rule of res ipsa loquitur should have been applied.

For the errors pointed out, this case should be reversed and remanded for a new trial.

BENNETT, HALL, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 29 Cyc. p. 627 (Anno); 26 R. C. L. p. 1062. (2) 29 Cyc. p. 592 (Anno).