INDEPENDENT EASTERN TORPEDO CO. v. GAGE.

No. 34298.   Nov. 20, 1951.

Rehearing Denied Jan. 15, 1952.

Application for Leave to File Second Petition For Rehearing Denied March 4, 1952.

*240 P. 2d 1119.*

G. C. Spillers and G. C. Spillers, Jr., Tulsa, for plaintiff in error.

Wallace & Collins, Tom Wallace, and Everett S. Collins, Sapulpa, for defendant in error.

O'NEAL, J.   This is an action for damage to a house alleged to be caused by an explosion in defendant's nitroglycerin plant.   The parties will be referred to as they appeared in the trial court.

The plaintiff, Beth Gage, is the owner of a tract of land upon which she had constructed a house to be used as a residence.   The foundation of the house was built with native stone set in cement.   The walls of the house were constructed with cement blocks.   This residence was situated about a mile and a half from a plant of defendant located near the town of Mannford, Oklahoma, at which plant the defendant, Independent Eastern Torpedo Company, manufactured nitroglycerin. In October, 1947, an explosion occurred at the plant of such force as to crack the cement walls of plaintiff's house, resulting in substantial damage thereto. Upon trial the jury found the issues in plaintiff's favor, assessing her damages in the sum of $1,750.   No contention is here made that the damages assessed are excessive.

A proper consideration of the case requires an examination of plaintiff's allegation of negligence as delineated in the fourth grammatical paragraph of her petition, which is as follows:

"The plaintiff alleges that on the 26 day of October, 1947, while in the operation of said plant through their agents, servants and employees, the agents, servants and employees of said defendant corporation being unknown to this plaintiff; and while manufacturing a substance known as nitroglycerin; that the said servants and employees of said company carelessly, negligently permitted the said constituent parts that made up nitroglycerin to become overheated and that as a result of said carelessness and negligence (sic) acts of the said servants and employees, the said nitroglycerin to-wit: about 600 quarts of the mixture of same exploded injuring the said home and building of the plaintiff herein."

The defendant, in its petition in error, alleges 18 specific grounds for reversal which may be epitomized on grounds that the verdict is not supported by the evidence, and is contrary to the law.

An analysis of the quoted paragraph of plaintiff's petition demonstrates that plaintiff does not make any general allegations of carelessness and negligence against the defendant in the operation of its nitroglycerin plant, which resulted in the explosion referred to. At most, plaintiff says that the servants and employees of the defendant carelessly and negligently permitted the constituent parts that make up nitroglycerin to become overheated and that as a result of such careless and negligent acts, the nitroglycerin, to wit: 600 quarts thereof, exploded injuring plaintiff's house.

A consideration of the evidence will more fully present defendant's contention that the judgment is contrary to law.

The evidence substantially discloses that plaintiff's residence was constructed with reasonably good material and in a reasonable workmanlike manner. The house was practically new, having been completed four months before the date of the explosion. The residence was being occupied by the parents of plaintiff, and their neighbors and others testified that prior to the explosion the house was in good condition, and that there was no evidence of defects in the outside or inside walls of the house, but that immediately after the explosion there were two large cracks in the north wall running from the top to the foundation wall. These cracks were said to be from one-eighth to one-fourth of an inch in width, having completely cracked the cement blocks. There was other proof of damages to the house.

The plaintiff's father, on the 26th day of October, 1947, heard an explosion and immediately went over to the defendant's plant. He remained there some time and upon returning to his residence found the walls of the house cracked, as heretofore indicated. The day following this event, he went to Tulsa, and called at the office of the Independent Eastern Torpedo Company, the defendant herein, and talked with a Mr. McFarland, whom plaintiff designated as defendant's superintendent. Witness testified as follows: "Well, I think he is general superintendent—anyway he was the biggest man in the company I could get to." "He (McFarland) introduced himself as the superintendent of the company." The witness stated he had a conversation with Mr. McFarland with reference to the explosion and the damage to plaintiff's house, and on several occasions Mr. McFarland came to the plaintiff's house and examined the damage complained of, and that thereafter he went to the defendant's office at Tulsa and talked to Mr. McFarland five or six times. The record shows that Mr. McFarland made numerous trips to plaintiff's house, and, on one occasion, he was accompanied by an inspector from Oklahoma City who examined the damage to the property. The witness further stated that on his second trip to the nitroglycerin plant, after the explosion, he met Mr. McFarland entering the defendant's plant and on this occasion had another conversation with him with reference to plaintiff's damages. Upon this occasion the witness detailed a conversation had by Mr. McFarland with a person identified in the record as "Bill." Defendant's objection to the statement was overruled and exceptions noted. The statement follows:

"I heard him (McFarland) talk to a boy Bill who is a truck driver, that is rides a torpedo truck; I don't know whether he drives it or not, he (McFarland) said 'Bill, why didn't you dump it?' Bill said, I dont know, Howard said run and we ran.' "

For the purpose of this appeal the foregoing is the evidence necessary for a proper consideration of the case.

At the close of plaintiff's evidence, defendant interposed a demurrer thereto and it being overruled, defendant announced it would not submit any evidence in defense.

Defendant presents his argument for reversal on three separate grounds.

(a) Burden was on the plaintiff to show that operatives in charge of the

plant were agents, servants and employees of the defendant.

(b) Declarations are incompetent to prove agency.

(c) Burden on plaintiff to prove negligence which was the direct and proximate cause of injuries complained of, otherwise she failed to make out a prima facie case.

Defendant's contention is that the burden is on the plaintiff to establish the fact of agency, citing, among other cases, the following: Oklahoma Automobile Co. v. Benner, 70 Okla. 261, 174 P. 567; Fuller v. Stout, 66 Okla. 15, 166 P. 898; Pierce Oil Corporation v. Myers, 117 Okla. 161, 245 P. 863; Garland v. Frazier, 177 Okla. 493, 61 P. 2d 188. In those cases the general rule is stated as follows:

"Agency cannot be proved against another by evidence of the declarations of an agent, and where one purports to act as agent for another, that fact in itself is not sufficient evidence upon which to submit the question of agency to the jury."

The cases cited, and many others found in the books, are predicated on the premise that A cannot bind B by a declaration that A is the agent of B. That was the situation disclosed in the Garland v. Frazier case, supra. But in reading the case it is disclosed that Garland, the defendant, took the stand and specifically denied the agency asserted by another. So the court quite properly held that plaintiff's case was not supported by the statement of a third person that he was Garland's agent.

Agency, when it becomes a pivotal issue in a case, must of necessity be determined by the peculiar facts of each case within the general law as presented in these cases. The application of the rule must likewise be applied as to the acts and conduct of those employees which the master has placed in control and management of the master's business.

As we view the record there was sufficient proof to establish a prima facie case that McFarland was the superintendent of the defendant company. If McFarland's statement that he was their superintendent be entirely disregarded, his subsequent acts and conduct as heretofore delineated raises a reasonable presumption he was acting for and on behalf of the defendant in its nitroglycerin operations at defendant's plant. The question of McFarland's agency was submitted to the jury in the court's instruction. The instruction fairly submitted the question of agency. Defendant does not, in brief or argument, contend to the contrary. Defendant's further contention that there was no proof defendant operated the nitroglycerin plant is hardly tenable in view of defendant's answer wherein it specifically admitted it was engaged in the manufacture and sale of nitroglycerin for the shooting of oil wells in Oklahoma.

As we view the case, the pivotal question to be determined is whether under this record plaintiff's evidence was sufficient to make out a prima facie case on (a) the facts pleaded in her petition, and (b) whether that burden has been sustained under the doctrine of res ipsa loquitur. As we construe plaintiff's petition she does not plead general allegations of negligence, but confines her allegations to the single charge that the defendant in the manufacture of nitroglycerin, by and through its employees, carelessly and negligently permitted the nitroglycerin to become overheated and as a result of said careless and negligent acts of defendant's employees, the nitroglycerin exploded damaging plaintiff's house.

Cases involving the application of the res ipsa loquitur doctrine are in irreconcilable conflict. This court, however, has consistently followed a liberal construction of the doctrine. In the early case of Guilford v. Foster & Davis, 131 Okla. 148, 268 P. 299, we held:

"Where, in an action founded on negligence, and specific acts of negligence

are alleged, the plaintiff's evidence is such as will fairly tend to prove such allegations, primary negligence is proved, and it is error to sustain a demurrer to the evidence."

To the same effect is Ramsey Oil Co. v. Dunbar (1935) 172 Okla. 571, 46 P. 2d 535; E. S. Billington Lumber Co. v. Cheatham (1937) 181 Okla. 402, 74 P. 2d 120; and Salyer Oil Co. v. Miller, 181 Okla. 171, 73 P. 2d 147.

The question posed here is whether the proof of an explosion in defendant's nitroglycerin plant sustains a presumption of negligence sufficient to establish a prima facie case for recovery. It is plaintiff's contention that the defendant's admission by answer establishes the fact that it is engaged in the manufacture and sale of nitroglycerin in the plant, and that by proof it is shown that this instrumentality was under the exclusive control of the defendant company, and that the explosion resulted in damages to plaintiff's property, establishing a prima facie case of negligence which, in the absence of evidence interposed by defendant by way of explanation of the explosion, sustains the verdict and judgment rendered.

The rule here invoked is stated in Shearman & Redfield on Negligence, §60, as follows:

"When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from the want of care."

In the instant case defendant did not interpose any evidence in explanation of the explosion but rested its case on the contention plaintiff failed to make out a prima facie case. In Selby v. Osage Torpedo Co., 112 Okla. 303, 241 P. 130, this court held:

"Where there is any competent evidence tending to show negligence on the part of the defendant and injury to plaintiff, as a proximate result, it is error to sustain a demurrer to the evidence."

"The rule of res ipsa loquitur is applicable to an accident resulting in injury to a stranger on his own premises from an explosion of nitroglycerin being transported by automobile truck along the road near his dwelling place. The explosion and injury as the result, being proved, the presumption of negligence is indulged and the burden showing otherwise shifts to the defendant."

The same rule is applied by this court in the case of Muskogee Electric Traction Co. v. McIntire, 37 Okla. 684, 133 P. 213; Sand Springs Park v. Schrader, 82 Okla. 244, 198 P. 987, and Southwest Ice & Dairy Products Co. v. Faulkenberry (1950) 203 Okla. 279, 220 P. 2d 257. In the last-cited case it was contended that plaintiff did not allege or prove negligence. Disposing of this contention this court held:

" 'Where the thing which caused the injury complained of is shown to be under the management of defendant, or his servants, and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence in the absence of explanation by defendant that the accident arose from the want or care.' "

A succinct statement of the rule is, where the circumstances of the occurrence that caused the injury are of a character that give rise to a reasonable inference that if due care had been employed by the party charged with care in the premises, the thing would not have happened, negligence may fairly be inferred in the absence of any explanation.

Defendant urges that negligence cannot be presumed but must be affirmatively proven. This is a correct statement of law, but it is qualified by the res ipsa loquitur rule, and relates to the manner rather than the burden of establishing negligence. The res ipsa loquitur doctrine simply creates an in-

ference or presumption of negligence which, in legal effect, constitutes evidence of negligence to go to the jury and which may be completely overcome by evidence adduced by the defendant. The rule is aptly expressed by this court in Lawton Coca-Cola Bottling Co. v. Shaughnessy, 202 Okla. 610, 216 P. 2d 579, as follows:

"Res ipsa loquitur is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer."

The great weight of authority is to the effect that where plaintiff pleads a particular cause of an accident, he in no wise loses his right to rely on the doctrine of res ipsa loquitur if the petition otherwise sufficiently states the cause of action, then the specific allegations of negligence in the complaint are wholly immaterial. Even if he fails to prove the specific allegations, the presumption is still available and the burden is still on the defendant to show the absence of negligence on his part. Cases so holding are referred to in notes listed under the case of Angerman Co. v. Edgemon, 76 Utah 394, 290 P. 169. Also reported in 79 A.L.R. at page 49, where, under the latest citation, the annotator states that the rule is followed in Arkansas, California, Connecticut, Hawaii, Michigan, New Jersey, New York, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Utah, Vermont, Washington, and the Dominion of Canada. We so held in Guilford v. Foster and Davis, 131 Okla. 148, 268 P. 299, wherein it is said:

"Where, in an action founded on negligence, a part of the plaintiff's case is such that the rule of res ipsa loquitur is applicable thereto, the rule will be applied to that part, though other parts of plaintiff's case may be capable of proof by direct evidence of specific acts of negligence alleged."

The defendant, however, contends that under the cases of Terrell v. First National Bank & Trust Co., 204 Okla. 24, 226 P. 2d 431; Carter Oil Co. v. Independent Torpedo Co., 107 Okla. 209, 232 P. 419; Eastern Torpedo of Ohio Co. v. Shelts, 121 Okla. 129, 247 P. 974; Independent Torpedo Co. v. Carder, 165 Okla. 87, 25 P. 2d 62; the plaintiff has failed to sustain the burden of establishing primary negligence and that in no event does the doctrine of res ipsa loquitur apply.

In the case of Terrell v. First National Bank & Trust Co., supra, we held that the doctrine of res ipsa loquitur could not be invoked until the plaintiff has first established as a preliminary proposition what thing caused the injury, and that the thing causing the injury was under the control of the defendant, or its servants. In that case this court held that the plaintiff, who was injured while passing through a revolving door at the bank building, could not recover under the rule because the bank did not at the time have control of the revolving door.

In the Carter Oil Co. v. Independent Torpedo Co. case, supra, an examination of the case discloses that the defendant was employed by the plaintiff to shoot an oil well. The company, a manufacturer of nitroglycerin, had the exclusive control thereof as it was lowered in defendant's well. The plaintiff, however, furnished the receptacle into and through which the shell, or torpedo, was lowered. We held that where the plaintiff furnished a part of the apparatus, and the defendant the remainder, the res ipsa loquitur doctrine could not be applied and plaintiff was relegated to an allegation of negligence and proof to support the same. That ruling is in conformity with the doctrine that plaintiff's proof must show the thing that caused the injury was under the exclusive control and management of the defendant, or its employees. In the case relied on, however, it is shown that the

thing was in the joint control and management of plaintiff and defendant.

In Eastern Torpedo of Ohio Co. v. Shelts, supra, the facts are practically identical with the facts in Carter Oil Co. v. Independent Torpedo Co. case, and the court, in the Shelts case, specifically referring to the Carter case, holds that where plaintiff and defendant both have supervision or control of the instrumentality or thing causing the explosion, the rule does not apply.

In Independent Torpedo Co. v. Carder, supra, the res ipsa loquitur doctrine was not involved, and as the case itself shows, the court stated that neither the applicable rule announced in Carter Oil Co. v. Independent Torpedo Co., nor in Eastern Torpedo of Ohio Co. v. Shelts, supra, was in point, as those cases were decided on the failure of the plaintiff to establish primary negligence, and those cases were predicated upon the court's finding that the instrumentality causing the injuries was under the control of both plaintiffs and defendants.

It is urged that the court admitted incompetent evidence prejudicial to defendant's rights. The evidence complained of relates to an event occurring after the explosion. Mr. McFarland, when he arrived at the nitroglycerin plant, appeared to be in doubt as to whether the accident was unavoidable. He at that time addressed the following inquiry to an employee of defendant: "Why didn't you dump it?" The employee's answer was "I dont know, Howard said run and we ran." Defendant relies on Eastern Torpedo of Ohio Co. v. Shelts, supra, in support of its contention that the above-quoted statement is prejudicial and justified a reversal of this case. In the Eastern Torpedo of Ohio Co. case, the plaintiff, shortly after the explosion, returned to the well and asked defendant's employee, "What's the matter, Vande, what's the trouble?" and his reply was "A leaky shell, of course, nothing else." It can be readily perceived this statement was a direct admission that defendant used a defective shell in its shooting operations. The statement, if admissible, would absolutely establish direct and positive proof of negligence. The court quite properly held it to be incompetent.

McFarland's statement cannot be construed as an acknowledgment of negligence, or admissions against defendant's interest. McFarland did not know why they failed to dump it (the nitroglycerin), neither did the employee referred to as "Bill," who said "I dont know, Howard said run and we ran." The fact of the explosion having been established, the burden shifted to the defendant to show the real cause of the accident, thereby destroying plaintiff's prima facie case under the res ipsa loquitur doctrine.

In the present case, the plaintiff having established her cause of action under the res ipsa loquitur doctrine, and the defendant having interposed no evidence in opposition thereto, the evidence thus presented by plaintiff established a prima facie case sufficient to sustain a finding in favor of plaintiff for the amount of the recovery.

The judgment of the lower court is affirmed.