**FEDERAL INSURANCE COMPANY et al., Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 75–1519.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted April 12, 1976.

Decided July 20, 1976.

Michael F. Hertz, App. Section, Civ. Div., Dept. of Justice, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., William R. Burkett, U. S. Atty., and William Kanter, Dept. of Justice, Washington, D. C., on the brief), for defendant-appellant.

Clarence P. Green, Oklahoma City, Okl., for plaintiffs-appellees.

Before HILL, SETH and DOYLE, Circuit Judges.

HILL, Circuit Judge.

The Government appeals a judgment against it in an action brought under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* Appellees are three insurance companies suing as subrogees of Davies Supply & Mfg. Co. whose property was damaged in a fire at Tinker Air Force Base in Oklahoma. The trial court relied on the doctrine of res ipsa loquitur in finding the Government's negligence was the cause of the fire. The doctrine permits an inference of negligence on the part of defendant sufficient to establish a prima facie case when plaintiff proves: (1) the event is of a kind which ordinarily does not occur in the ab-

sence of someone's negligence, (2) the accident was caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the accident was not due to any voluntary action or contribution on the part of the plaintiff. *Mohawk Drilling Co. v. McCullough Tool Co.*, 271 F.2d 627 (10th Cir. 1959); *Canada Dry Ginger Ale, Inc. v. Fisher*, 201 Okl. 81, 201 P.2d 245 (1948). The issues on appeal primarily concern whether element (2) is supported by the evidence set out below.

The fire occurred in the Government's prototype electroplating facility at Tinker Air Force Base. Much of the equipment for this facility had been provided by Davies under a contract made in 1969. The Government stored this equipment for over a year before putting it into operation in early June of 1971.

The cause of the fire was traced to a specific tank and supporting equipment used for electroplating. The tank was made of polypropylene and had a capacity of approximately 100 gallons. The solution in the tank was heated by a quartz immersion heater which was thermostatically controlled. The solution was circulated and purified by an external filter and pump connected to the tank by vinyl hoses. The tank and the quartz immersion heater were supplied by Davies.

On June 15, 1971, the tank was filled with water and chemicals to compose a nickel sulfamate solution for use in nickelplating aircraft parts. In order to maintain the chemical composition of the solution, it was heated to a temperature of 120 degrees Fahrenheit. This temperature was maintained day and night until Friday, June 18, 1971, when the temperature was reduced to 100 degrees before the Government's employees left for the weekend at 4:30 p. m. Their intention was to leave the apparatus unattended until Monday morning. About 28 hours later, the fire was discovered.

The evidence established that the fire started when the liquid in the tank escaped. This permitted the heater to reach a temperature perhaps as high as 1,000 degrees and to ignite surrounding materials. An expert witness testified that this event would not have occurred in the absence of someone's negligence. As a result of the fire other property belonging to Davies was damaged and the insurance companies paid the amount due on Davies' fire insurance policies.

At trial, witnesses testified concerning three possible explanations of how the liquid escaped from the tank. The first was evaporation, either normal evaporation or boiling caused by a malfunction in the thermostat. The second was that the discharge tube which returned the solution to the tank from the filter pump had either broken or floated to the surface and sprayed the solution out of the tank. The third explanation was that the tank could have developed a leak.

The Government's contention the doctrine of res ipsa loquitur was improperly applied centers upon the three possible explanations of the loss of the liquid from the tank. The government argues it was not enough to show that the fire was caused by the heater when the liquid escaped, but that appellees also had to show which of the three possibilities was the cause of that event. Although we would agree the Oklahoma cases concerning causation in res ipsa cases are somewhat confusing,[1] the Government's analysis only confuses it further.

We believe appellees' evidence that the fire was caused by the heater as a result of the liquid escaping from the tank sufficiently identifies the instrumentality which caused the fire. This is not a case like those cited by the Government involving a fire of unknown origin. *E. g., Downs v. Longfellow Corp.*, 351 P.2d 999 (Okla.1960); *Smith v. Vanier*, 307 P.2d 539 (Okla.1957); *National Union Fire Ins. Co. v. Elliott*, 298 P.2d 448 (Okla.1956). In those cases there was a complete failure to identify the in-

---

1. Speiser, Res Ipsa Loquitur § 6:66 (1972); Hager, Res Ipsa Loquitur in Oklahoma: The Impact of Chapman, 21 Okla.L.Rev. 280 (1968).

strumentality which caused the fire. This case is more like those in which the instrumentality has been identified, but the precise manner in which the instrumentality acted to ignite the fire is unknown. *Oklahoma Natural Gas Co. v. Colvert*, 260 P.2d 1076 (Okla.1953); *Okmulgee Supply Corp. v. Hall*, 195 Okl. 481, 158 P.2d 1014 (1945); *Guilford v. Foster & Davis*, 131 Okl. 148, 268 P. 299 (1928). In these cases the doctrine of res ipsa loquitur was held to be properly applied.

The difference between the two lines of cases is that, in the latter cases, the foundation fact—the instrumentality—was sufficiently established to permit the inference of negligence. In the former cases, the foundation fact itself had to be inferred. To then infer negligence would be an inference upon an inference. In the present case the instrumentality which caused the fire was sufficiently identified and was not merely inferred. *See St. John's Hospital & School of Nursing v. Chapman*, 434 P.2d 160 (Okla.1967).

What is involved here is an instrumentality made up of component instrumentalities; the electroplating unit consisted of a tank, a heater, and a filter pump. Such a case was considered by the Oklahoma Supreme Court in *Carter Oil Co. v. Independent Torpedo Co.*, 107 Okl. 209, 232 P. 419 (1924). The defendant had been hired to "shoot" plaintiff's well with a nitroglycerine shell. When defendant's employee lowered the shell into the well, it exploded prematurely and destroyed the well and its casings. The court noted that the shell was defendant's instrumentality and was within defendant's absolute control. The plaintiff, however, had provided the receptacle into which the shell was placed. The court said of this relationship: "The well partly cased and partly not cased became an integral part of the entire apparatus necessary to accomplish the purpose of the parties . . . ." The syllabus containing the rule of the case states:

The thing causing the accident must have been under the control of the defendant at the time of the accident. Where there are several instrumentalities used in doing the thing out of which the accident arose, some of which were under the control of the defendant and others of which were under the control of the complaining party, the doctrine of res ipsa loquitur will not apply where the accident may reasonably have occurred by reason of defects in the instrumentalities under plaintiff's control.

Thus the question raised by the Government's contention is not whether appellees' evidence identified the instrumentality which caused the accident in order to permit the inference of negligence, but whether the component instrumentalities were within the Government's exclusive control so as to limit the inference of negligence solely to the Government. The test as stated in *Carter Oil* is whether the accident may reasonably have occurred by reason of defects in the instrumentality supplied by appellees' insured, Davies Supply.

The trial court had occasion to specifically consider the Government's evidence that the tank supplied by Davies was defective.[2] The court held the tank was without defect and that this could not reasonably be considered as a cause of the fire. We cannot say this finding was clearly erroneous. The evidence does not have to absolutely exclude every possible cause other than defendant's negligence, it need only show defendant's negligence was more probably than not the cause. *See Speiser, supra* at § 2:5.

With the possibility of a defect in the tank eliminated, the evidence establishes the Government was otherwise in exclusive control of the instrumentality which caused the fire. There was expert testimony that the fire would not have occurred in the absence of negligence. The only reasonable inference remaining is that the neg-

2. This action was tried together with an action brought by the Government against Davies Supply on a products liability theory. The Government attempted to prove the tank was defective, but the court gave judgment to defendant. This judgment was not appealed.

ligence of the Government was the cause of the fire, and this satisfies every element of a res ipsa loquitur case.

 The Government also contends it produced sufficient evidence to rebut any inference of negligence arising by virtue of the res ipsa loquitur doctrine. Weighing the evidence in this regard is a matter peculiarly within the province of the trial court as trier of the facts. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). His judgment is not clearly erroneous.

AFFIRMED.