(76 South. 230)

No. 22325.

BRADLEY v. SHREVEPORT GAS, ELECTRIC LIGHT & POWER CO. et al.

(April 16, 1917.   On Rehearing, June 30, 1917.)

*(Syllabus by Editorial Staff.)*

1. GAS ☞18 — INJURIES FROM EXPLOSION — LIABILITY.

It was negligence for a gas company to open an outlet in a gas pipe to allow the gas pressure to blow out the obstructions in the pipe and thereby liberate in a partly closed shed highly combustible or explosive gas when mixed with air, unless this was unavoidably necessary and was accompanied by every reasonable precaution for guarding against the danger thus created.

2. GAS ☞18—INJURIES FROM EXPLOSION— LIABILITY.

That this was not unavoidably necessary was conclusively shown by the fact that the gas company could have installed, and shortly after the explosion did install, an apparatus of which it knew, and which it had not installed sooner merely to save expenses, and by testimony that a pipe could have been adapted to the outlet for conducting the gas out of the shed to be harmlessly diffused in the open air.

3. GAS ☞20(2)—INJURIES FROM EXPLOSION— EVIDENCE.

In an action for the death of an employé of a compress company in charge of its boilers, due to an explosion of gas while a workman of the gas company was letting gas escape from a pipe for the purpose of removing obstructions therein, where there was no evidence that deceased did not close the valves controlling the gas firing the boilers, and the evidence showed that within a few minutes after the explosion the door of the furnace was closed, there was no flame under the boilers, and the valves were properly closed, contributory negligence of deceased was not shown.

4. GAS ☞20(2)—INJURIES FROM EXPLOSION— EVIDENCE.

In an action for death caused by explosion of gas which defendant's workman was allowing

to escape from a gas pipe, plaintiff was not required to show how the gas became ignited.

5. GAS ☞18—INJURIES FROM EXPLOSION— CONCURRING NEGLIGENCE.

The liberation of a large quantity of natural gas, which was highly combustible or explosive when mixed with air, in a partly closed shed without taking any precautions against its becoming ignited, was negligence and one of the concurrent and co-operating causes of an injury caused by an explosion, and rendered the gas company liable no matter how the ignition was brought about, unless the injured person was himself responsible therefor and contributed by his negligence to the ignition.

6. GAS ☞20(2)—INJURIES FROM EXPLOSION— EVIDENCE.

The burden was upon the gas company to show that the injured person by his negligence contributed to the ignition of the gas.

7. DEATH ☞98—DAMAGES FOR DEATH—INADEQUATE DAMAGES.

Where a man between 60 and 70 years old was burned nearly all over the body by an explosion of gas, and continued conscious for some 33 hours, an allowance to his widow of $3,333 for pain and suffering, $4,146 for his death, and $1,125 for the loss of companionship, would not be increased.

8. MASTER AND SERVANT ☞96(2)—LIABILITY FOR INJURIES—ACTS OF THIRD PERSONS.

An employé's widow had no ground of action against her husband's employer for his death due to an explosion of gas which a workman of the gas company was allowing to escape from a pipe and which exploded; the employer being in no way responsible for the accident.

On Rehearing.

9. COSTS ☞236 — JURY COSTS — PARTIES LIABLE.

Where a judgment was set aside on appeal for irregularity in impaneling the jury, the costs incident to the jury, including the cost of entering judgment and taking appeal, could not be thrown upon defendant who did not ask for a jury and was not responsible for its being called, and all the costs incident to the jury on such trial must be borne by plaintiff, though she recovered on a second trial.

10. COSTS ☞99—PERSONS LIABLE—PERSONS NOT PARTIES.

Such costs could not be put upon the parish which was not a party to the suit on the ground that they resulted from an error of the judge, as the judge is not an agent of the parish, but one of the instrumentalities of the state government.

11. COSTS ☞236—ITEMS—COSTS OF FORMER TRIAL.

All the other costs of the lower court on the first trial except those incident to the jury

and those of entering judgment and taking appeal should be imposed on defendant as costs incurred in the trial of the case, since on the second trial the case was taken up where the verdict of the jury left it.

O'Niell, J., dissenting in part.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Augusta Bradley against the Shreveport Gas, Electric Light & Power Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

See, also, 139 La. 1029, 72 South. 725.

Alexander & Wilkinson and Browne, Roberts & Browne, all of Shreveport, for appellants. Joseph H. Levy, of Shreveport, for appellee

PROVOSTY, J. The plaintiff, Augusta Bradley, sues in damages for the sufferings and death of her husband, Cy Bradley, and the loss of his companionship, and also for the loss of a horse, which losses resulted from an ignition or explosion of gas at the compress of the Columbia Compress Company in the city of Shreveport. This company is made a defendant, and also the Shreveport Gas, Electric Light & Power Company and the Southwestern Gas & Electric Company. The one gas company is the successor of the other, and admits its liability if the other is held liable, hence the two gas companies may be referred to simply as the Gas Company. It supplied the gas for firing the boilers of the Compress Company, and the plaintiff's husband, Bradley, was the fireman. The flow of gas not being satisfactory, owing to the presence of salt water in the pipe, the Gas Company was notified to remedy the trouble, and it sent its workman, Peavy, to attend to the matter. He opened a 4-inch outlet in the pipe, and let the gas pressure blow out the salt water and whatever other obstruction there might be in the pipe. This outlet was under a shed which was some 40 feet long, 18 feet wide at one end, and 33 at the other, and nearly entirely inclosed, it having on one side the brick wall of the boiler room, on the other side a wall of corrugated iron, at the 18-foot end, a wall of corrugated iron, and at the 33-foot end a brick wall for a distance of 20 feet and an open space the rest of the way. How high the ceiling or roof of this shed was is not stated in the evidence. In the wall at the 18-foot end was a door. Whether this door was open or not at the time of the explosion, the evidence does not show. Through the boiler room wall was a door, which was open at the time of the explosion. The flow of gas from the outlet was so strong that defendant's workman, Peavy, and the witness, Ahlers, standing 8 or 10 feet away from the outlet, had to come close to each other to make themselves heard to each other above its roar; and the current in striking a partition composed of 2-inch iron piping, some 16 feet away, caused it to vibrate.

The negligence which plaintiff charges against the defendants is in their having liberated this large quantity of gas in this shed, or, so-called, room, whereby the danger of ignition or explosion was created.

The Gas Company answers that this way of doing was not negligence since it was the usual way, and that plaintiff has failed to make out her case for the further reason that she does not show what caused the gas to ignite, and that most probably the ignition was through the negligence of Bradley himself in not having turned off the gas completely from under the boilers, so as to extinguish completely the flames under them, as Peavy had the right to assume had been done.

[1] The gas which the Gas Company was thus liberating was natural gas, inodorous. It becomes highly combustible, or explosive, when mixed with air. This the Gas Company knew. The liberation of it created a danger, and therefore was negligence, unless

unavoidably necessary, and unless accompanied by every reasonable precaution for guarding against the danger thus created.

[2] That it was not unavoidably necessary is shown conclusively by the fact that the Gas Company could have installed a certain apparatus which it knew of and which it did install shortly after this explosion, and had not installed sooner merely to save expenses; and is shown further by the testimony of the witness Sipe, to the effect that a pipe could have been adapted to this outlet for conducting the gas out of the room or shed, to be harmlessly diffused in the open air. It is said by the Gas Company that pieces of corrugated iron had fallen out of the walls, and that the panes of glass in the windows were broken, so that the shed was at least 33 per cent. open. Granting this, the event showed the negligence of turning loose this large volume of gas in it—partly open though it was.

And no precautions whatever were taken by Peavy, so far as the record shows. He and Bradley and the witness Ahlers were the only persons present, and Ahlers alone survived to testify. He says: That Bradley, who was in charge of the boilers, came and told him that the Gas Company's man had come. That he (Ahlers) was then at the lever which operated the compress, and that, as he knew that the compress would keep on operating for some five minutes after the fire had been extinguished under the boilers, he remained at his post for that length of time, and then walked to the place where Peavy was at the gas outlet. That in doing so he passed through the boiler room and saw that the handle of the valve for cutting off the gas from the boilers was in the position in which it is when the gas is cut off. He could not say of his own knowledge that it was cut off so tight that absolutely no gas at all could pass, but assumed that such was the case, basing himself on his knowledge of the careful manner in which Bradley usually did his work. That, when he got to where Peavy was, he and Peavy exchanged a few words, and that for doing so they had to come close to each other, as the roar of the escaping gas covered their voices, and that Peavy then went into the boiler room. That he (Ahlers), after a few moments, happened to notice that the gas was forming a mist on one of the corners of the room. That, seeing this, he instructed Bradley, who was near the door leading into the boiler room, to shut this door, and that Bradley at once set about carrying out this instruction, but that, just as he took hold of the door to pull it to, flames came out of the door, and he (Ahlers) rushed out the best way he could with his hands over his eyes. That Bradley, his clothes on fire, joined him outside, and begged him to put out the fire that was burning him. It is thus seen that Peavy did not even take the precaution of closing this boiler room door.

How the gas became ignited no one knows. Plaintiff alleges that it must have been by coming in contact with the heated surface of the furnace beneath the boilers, or else with some lingering flame under them, and that Peavy must have opened the furnace door. Defendants contend, and we think show, that gas will not ignite by contact with a heated surface no matter how hot, and contends that if any flame lingered under the boilers it was as the result of the negligence of Bradley in not closing the valve perfectly so as to shut off the gas completely.

To this suggestion of negligence plaintiff replies that the valves might have been defective, allowing sufficient gas to pass to keep alive a lingering flame.

The learned counsel for the Gas Company argue that the gas from the outlet in escaping from the shed would have sought the open space in the wall, rather than the door leading into the boiler room; and that, therefore, the gas which ignited in the boiler room

must have come from the outlet under the boilers.

This argument overlooks the undisputed fact that the first persons to go into the boiler room after the explosion found the valve securely closed and no flame under the boilers; and it also overlooks the fact that whatever escaping gas might have fed the flame under the boilers and kept it agoing would have been consumed under the boilers and not escaped therefrom.

[3] The evidence fails entirely to show that Bradley was guilty of contributory negligence. Very true he was in charge of the boiler room, but he was thus in charge only when the plant was in running order; not when the workman of the Gas Company had come upon the scene and taken charge for the purpose of repair. His functions were limited to dealing with the gas while securely imprisoned in the pipe; not when turned loose in the open air. But if it was incumbent on him to have closed all the valves, there is absolutely nothing in the evidence to show that he did not close them. For showing that he did not do so, there is only the vague surmising and theorizing of the learned counsel of the Gas Company.

There is no evidence to show that the door of the furnace was opened by Peavy, except such as was mere hearsay and inadmissible. As to any lingering flame under the boilers, the evidence shows that those who came to the spot within a few minutes after the explosion found the door of the furnace closed, no flame under the boilers, and all the valves properly closed.

[4-6] We do not agree, however, with the learned counsel of the Gas Company that for making out a case plaintiff had to show how the gas became ignited. The liberation of this large quantity of gas in this shed without taking any precautions against its becoming ignited was a negligent act, and was one of the concurrent and co-operating causes of the injury, and rendered the Gas Company liable, no matter how the other concurrent and co-operative cause, namely, the ignition, was brought about, unless Bradley was himself responsible for this other cause, or, in other words, contributed by his negligence to the ignition; and this is not shown, and the burden of showing it was on the Gas Company.

We think the duty clearly rested on the Gas Company before liberating this large volume of gas to make sure that all causes for its ignition were removed.

An analogous case is Moore v. Lanier, 52 Fla. 353, 42 South. 463, where the Supreme Court of Florida said:

"If the gas was present because the defendant did negligently and carelessly fit, install, and equip the service pipe in the storeroom, and it became ignited without the plaintiff's negligence contributing thereto, and an explosion occurred, the defendant is liable for the damages resulting from the explosion, even though he was not responsible for the ignition."

In support of this the court cites a large number of decisions:

"A gas company is not liable as an insurer for injuries sustained by reason of the escape or explosion of its gas, but is held to a degree of care that is commensurate with the dangerous character of the substance handled. If a gas company fails to exercise this degree of care and injury results from such negligence it is liable, provided the person injured is free from fault contributing to the injury, and this even though there may have been other intervening agencies which have also contributed to the injury." 20 Cyc. 1170.

Id. p. 1172, note:

"If a gas company negligently suffers gas to leak from its street mains and accumulate in an excavation underneath the street, it is liable for the ignition and explosion of the gas by any cause which should have been foreseen as a probability (Koplan v. Boston Gaslight Co., 177 Mass. 15, 58 N. E. 183); and this, although a third person causing the ignition may also be chargeable with negligence (Koplan v. Boston Gaslight Co., 177 Mass. 15, 58 N. E. 183). A gas company which fails to use due care in discovering and repairing a leak in its pipes is jointly liable with one who negligently lights a match in endeavoring to locate the leak, for damages caused by the resulting explosion."

In Lane v. Atlantic Works, 111 Mass. 136, the following was said, and it is quoted with

approval in Stone v. Boston & A. R. Co., 171 Mass. 540, 51 N. E. 3, 41 L. R. A. 794, to wit:

"In actions of this description the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening or contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise."

The law on this point is very tersely and clearly summed up in 21 A. & E. E. of L. pp. 495 and 494, as follows:

"To show that other causes concurred in producing or contributing to the result complained of is no defense in an action for negligence. There is, indeed, no rule better settled in the present connection than that the defendant's negligence, in order to render him liable, need not be the sole cause of the plaintiff's injuries.

"It has been held in some cases that where the injuries would not have been sustained but for the independent illegal act of a third person, a defendant's earlier negligence is too remote to render him liable. But where an independent, illegal act was of a nature which might have been anticipated, and which was the defendant's duty to provide against, he will be liable for the breach of such duty notwithstanding the production of injuries by the intervention of an act of the character described."

The ignition not being attributable to any act of plaintiff, nor to the willful, intentional act of any one, the cause of it, which, for all that is known, may have been the unintentional, nonculpable act of Peavy himself, or of some one else, becomes an altogether negligible element.

[7] Remains the question of quantum of damages. The jury allowed as follows:

"For pain and suffering, $3,333; for death, $4,146; for loss of companionship, $1,125; for horse, $43—making a total award of $8,647."

The testimony of the witness Furman impresses us as being more likely than that of plaintiff to be correct as to the age of Bradley. This would make him out to have been 60 to 70 years old. He was burned nearly all over the body; to a crisp in places. He continued conscious for some 33 hours. We find no good reason, however, for increasing the amount of damages allowed by the jury.

[8] As against the Columbia Compress Company plaintiff has no ground of action, as that company was in no way responsible for the accident.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, and that the defendants the Southern Gas & Electric Company and the Shreveport Gas & Electric Light & Power Company pay the costs of this appeal.

On Rehearing.

This case was tried a first time by a jury, and a second time by the judge without a jury. The judgment on the first trial was set aside by this court because of informalities. On the second trial the case was submitted on the evidence which had been taken on the first trial. In setting aside the judgment, this court left open the question of which side should pay the costs of the first trial. This was one of the questions in the case on the original hearing on the present appeal, but was so completely overshadowed by the main question that this court, overburdened with cases as it is working under pressure all the time, as unfortunately it must do, overlooked it. And, again, from the same cause of unavoidable hastiness in despatching the cases, the court intending to affirm the decision in favor of plaintiff, overlooked the fact that the amount allowed by the judge was less than that which had been allowed by the jury, and inadvertently affirmed the judgment without amendment.

On the question of amount of judgment, a rehearing was granted merely for the purpose of rectifying this inadvertence. There

was no idea that further argument might lead the court to allow a smaller amount than that fixed by the verdict of the jury, for the matter had been very fully discussed in consultation and a larger amount had not been fixed upon simply because no distinct reason could be found why the figures adopted by the jury should be increased.

[9, 10] The question of liability for costs has now had full consideration. The reason why the former judgment was set aside was that there had been irregularity in impaneling the jury. The legal situation stands, therefore, as if this jury had not served, and hence the costs of it should not be thrown upon defendant, who did not ask for it and was not responsible for its being called. All the costs incident to the jury on the first trial must therefore be borne by plaintiff. Plaintiff's learned counsel suggest that the irregularity in question resulted from an error of the judge, and that therefore plaintiff should not be mulct in these costs; that plaintiff should not suffer for a fault of the judge; that, therefore, if the costs are not to be thrown upon defendant, they ought to be put upon the parish of Caddo. A very obvious answer to that suggestion is that the judge is not the agent of the parish of Caddo, but is one of the instrumentalities of the state government, and that the parish of Caddo is no party to the suit, and therefore cannot be condemned to anything in it.

[11] All the other costs of the lower court in the first trial except those of entering judgment and taking appeal may be considered as having been incurred in the trial of the case, since on the second trial the case was taken up where the verdict of the jury had left it. They are therefore the costs of the case, and the defendant should bear them. The cost of entering judgment on the verdict of the jury and those incident to the taking and perfecting of the first appeal must be borne by plaintiff.

It is therefore ordered, adjudged and decreed that plaintiff, Augusta Bradley, have judgment against the Shreveport Gas, Electric Light & Power Company, and the Southwestern Gas & Electric Company in solido, in the sum of $8,647, with legal interest from judicial demand; and that the defendant pay all costs of this suit except those incident to the jury on the first trial of this case from the time of the summons and impaneling of the jury to the time of its discharge and those incident to the rendition of judgment and the taking and perfecting of appeal on the said first trial.

O'NIELL, J., dissents from that part of the decree allowing interest from judicial demand instead of from date of the judgment; and otherwise concurs.