CITY OF SALEM *vs.* SALEM GAS LIGHT COMPANY.

Essex.    February 13, 1922. — June 5, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Deed,* Boundary on public way. *Boundary. Negligence,* Of gas company. *Tree. Municipal Corporations. Damages,* In tort: for destruction of trees. *Practice, Civil,* Exceptions. *Waiver.*

A boundary in a deed, "Beginning . . . at the junction of" two public ways, "thence running . . . by" one of the ways, runs to the centre of the way, although by the lineal measurements stated the boundary would end at a side of the way.

At the trial of an action of tort against a gas company for damages due to loss of trees caused by gas leaking from mains of the defendant, it was admitted that in the spring or summer of 1918 the trees were killed by gas which leaked from mains of the defendant, and there was evidence tending to show that there had been no repairs upon the main from the time when it was laid in 1851 till February, 1918; that inspections were made once in ten years, the last before the leak having been made in 1912; that in October, 1915, at a corner of streets at the plaintiff's property there was a strong smell of gas and the earth was "a greenish color, a dirty, dark color;" that on February 28, 1918, the defendant was notified of a leak in the gas main in the street near the trees and workmen of the defendant found the ground saturated with gas coming from a broken pipe, which they repaired; that on March 16, a further complaint was made, the smell of gas was strong in a building on the plaintiff's premises and in cellars in the vicinity and repairs were made; that the trees were healthy in January, 1918, but in the following spring the leaves thereon crumpled and dropped off, the limbs became brittle, and finally the tops of the trees died and were removed. *Held,* that a finding was warranted that the defendant was negligent in not using proper diligence in inspecting its main pipe in front of the plaintiff's premises, or in permitting leaks to occur through a defect in the pipe, or in failing to repair the leaks with reasonable promptness after they had been discovered.

On the question of damages in the action above described, evidence properly was admitted of the diminution in the market value of the real estate by reason of the destruction of the trees, and, as an incident of such damage, evidence was admissible showing the cost of cutting off the tops and removing the trees and substituting others in their places.

A municipal corporation, which has received real estate by a deed of gift for the purposes of a free public library, has sufficient interest in trees upon the land to enable it to maintain an action of tort against a gas company whose negligence caused the destruction of the trees through gas escaping from its mains.

The acts of one describing himself as acting tree warden of a city, done under instructions of the superintendent of streets and consisting of the cutting off of the tops of trees beside a public way and upon property given to the city for free public library purposes, where it appears that the trees had been killed

by gas and that the limbs were "falling right along" and had to be cleared up every other day, cannot be said to have been unlawful.

Where at the trial of an action there is a verdict for the plaintiff and both the plaintiff and the defendant save exceptions and present them to this court, if the plaintiff in his brief states that he does not desire to have his exceptions considered unless the defendant's exceptions are sustained, and the defendant's exceptions are overruled, the plaintiff's exceptions will be treated as waived.

TORT for damages caused by the loss of trees belonging to the plaintiff by reason of an escape of gas from mains of the defendant. Writ dated December 16, 1919.

In the Superior Court the action was tried before *White,* J. The witness Mackay, whose testimony is referred to in the defendant's eighteenth request for a ruling and in the opinion, testified that he was acting tree warden of Salem in 1918 and took orders from the street commissioner, that limbs were removed from the trees in question under his supervision and that he acted under instructions from the street commissioner "but that was not the only reason for taking them down—he saw they were in a bad state, they were falling, the limbs were falling down, the maple tree broke, that these trees were not dead until the gas struck them; that the limbs were falling right along; that it was necessary to send a man every other day to clean up the road of limbs ·which had fallen."

Other material evidence is described in the opinion.

At the close of the evidence, the defendant moved that the trial judge order a verdict for it. The motion was denied, subject to an exception by the defendant.

The defendant made, among others, the following requests for rulings:

"2. The plaintiff is not entitled to recover for damages to the five trees on the northerly side of Essex Street.

"3. If the court refuses to give the second request, then the defendant asks that the jury be instructed that the plaintiff is entitled to recover only nominal damages for injury to the trees on the northerly side of Essex Street, and then only in case the defendant is negligent.

"4. The plaintiff has failed to maintain by a fair preponderance of the evidence that the defendant was careless and negligent in placing its gas mains in the position on the street that the mains occupied.

"5. The plaintiff has failed to maintain by a fair preponderance of the evidence that the defendant was careless in not laying its pipes properly.

"6. The plaintiff has failed to maintain by a fair preponderance of the evidence that the defendant was careless and negligent in not using suitable pipes and materials.

"7. The plaintiff has failed to maintain by a fair preponderance of the evidence that the defendant was careless and negligent in failing to properly inspect its mains.

"8. The plaintiff has failed to maintain by a fair preponderance of the evidence that the defendant was careless and negligent in seasonably checking the flow of gas from leaks in its mains."

"10. The defendant does not warrant against the escape of gas from its pipes or damage to trees."

"17. If the negligence of the City in caring for its trees contributed as a cause to the death of said trees. the defendant would not be liable.

"18. The cutting off of the tops of the trees by Mackay was an unlawful act and the plaintiff cannot recover damages for costs of the same.

"19. The plaintiff cannot recover in this action the cost of removing the five trees in front of the public library.

"20. The plaintiff cannot recover in this action the cost of replacing the five trees in front of the public library.

"21. If the plaintiff recovers at all, it can only recover the damage to its real estate, if any, caused by the destruction of its trees by the negligence of the defendant."

The rulings were refused, there was a verdict for the plaintiff in the sum of $1,000; and both parties alleged exceptions, which, after the resignation of *White*, J., were allowed by *Cox*, J.

*W. A. Pew*, for the defendant.

*J. J. Ronan*, for the plaintiff.

CROSBY, J. This is an action of tort to recover damages for the destruction of seven shade trees, caused by the alleged negligence of the defendant. The trees were located on Essex Street, in the plaintiff city, near the curbing of the sidewalk, — two on the southerly side of the street and five on the northerly side. The five on the northerly side were in front of premises given to the plaintiff city and occupied as a free public library. The plaintiff's

title to the premises is derived from two deeds to it, both from Mary A. Bertram and others. The description in the first deed commences as follows: "Beginning at the Southeasterly corner thereof at the junction of Essex and Munroe Streets, thence running Southwesterly by said Essex Street about one hundred eighty-four feet to land of George Wheatland;" and in the second deed: "Beginning at the southeasterly corner thereof at the junction of said streets, thence running southwesterly by said Essex Street about one hundred eighty four feet, to land of George Wheatland." The description bounds the land on the southerly side by Essex Street (a highway), and the grant extends to the centre of the street. *Phinney* v. *Watts,* 9 Gray, 269. *Boston* v. *Richardson,* 13 Allen, 146. *Everett* v. *Fall River,* 189 Mass. 513. *Brown* v. *Peabody,* 228 Mass. 52, 55.

The circumstance that the easterly line of the land along Munroe Street as described in the deeds by its lineal measurements ended at the northerly line of Essex Street and not at the centre line of the street, does not affect the conclusion reached; and it does not rebut the presumption that a boundary on a highway is in the centre of the way. *Newhall* v. *Ireson,* 8 Cush. 595, 598. *Clark* v. *Parker,* 106 Mass. 554. *Gould* v. *Eastern Railroad,* 142 Mass. 85, 89. As the deeds conveyed to the plaintiff the fee to the centre of the street, we need not consider whether, as the plaintiff contends, it was the owner of the trees by virtue of St. 1915, c. 145.

The presiding judge ruled that the plaintiff was not entitled to recover for the destruction of the trees on the southerly side of the street. To this ruling the plaintiff excepted.

The bill of exceptions recites that "There was evidence which would justify a jury in finding that in the spring or summer of 1918 the five trees on the northern side of the street were killed by gas which escaped from the defendant's main on Essex Street." The questions raised by the defendant's exceptions are whether there was any evidence of negligence of the defendant in permitting gas to escape and kill the trees on the northerly side of the street; and whether there was any error at the trial in the admission of evidence or in the rulings or refusals to rule of the judge.

The evidence is in part as follows: The gas main was laid in Essex Street by the defendant in 1851, and there had been no repairs upon it from that time until February, 1918. Inspections

were made once in ten years, the last being made in 1912. In October, 1915, near the corner of Essex and Munroe streets, there was a strong smell of gas; and the earth was "a greenish color, a dirty, dark color." On February 28, 1918, the defendant was notified of a leak in the gas main on Essex Street near the trees; a cistern and water gate in the street were filled with gas; the defendant's workmen made holes in the ground, and all these holes were filled with gas. The next day they found a broken pipe which they repaired temporarily, and made further repairs on it the following day. On March 16, 1918, complaint was made to the defendant of escaping gas in the street, near the library; and the smell was in the boiler room of the library. Repairs were started on March 18, and holes were dug in the lawn in front of the library, one of them about twelve feet from one of the trees. The earth smelled strongly of gas, which had also permeated the cellars of some of the houses in that vicinity. The trees had been strong and healthy in January, 1918, but in the following spring the leaves thereon crumpled up and dropped off, the limbs became brittle, and finally the tops of the trees died and were removed.

The evidence was ample to warrant a finding that the defendant was negligent in not using proper diligence in inspecting its main pipe in front of the plaintiff's premises, or in permitting leaks to occur through a defect in the pipe, or in failing to repair the leaks with reasonable promptness after they had been discovered. *Bartlett* v. *Boston Gas Light Co.* 117 Mass. 533. *Smith* v. *Boston Gas Light Co.* 129 Mass. 318. *Thompson* v. *Cambridge Gas Light Co.* 201 Mass. 77. *Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221.

The defendant offered evidence to show that in 1915 the plaintiff laid a water main through Essex Street and in doing that work undermined the defendant's gas main; and thereby, in connection with the weather conditions, caused the pipe to leak. Whether the leaks were so caused or were due to other factors for which the defendant was responsible, was for the jury to determine.

Upon the question of damages the trial judge properly admitted testimony of the diminution in the market value of the real estate by reason of the destruction of the trees, and as an incident of such damages evidence was admissible showing the cost of cutting off the tops and removing the trees and substituting others in their

places.    *Gilmore* v. *Driscoll,* 122 Mass. 199, 209.    *Howes* v. *Grush,* 131 Mass. 207, 215.    *Hopkins* v. *American Pneumatic Service Co.* 194 Mass. 582.

The second request that "The plaintiff is not entitled to recover for damages to the five trees on the northerly side of Essex Street" could not properly have been given.    The plaintiff had sufficient interest in the trees as part of its real estate to maintain the action. The judge correctly instructed the jury that to recover "The plaintiff must prove not only that it was gas that killed the trees, but that it was gas that escaped from the pipes of the Gas Company through its negligence."

The defendant's fourth, sixth and tenth requests were given in substance.    The seventh and eighth presented questions of fact for the jury to determine.    The seventeenth was immaterial as the defendant admits there was evidence which would justify a jury in finding that in the spring or summer of 1918 the five trees on the northerly side of the street were killed by gas which escaped from the defendant's main on Essex Street.    The eighteenth request was denied rightly; it could not have been ruled that the act of Mackay in cutting off the tops of the trees was an unlawful act.    *Sheehan's Case,* 122 Mass. 445.    *Commonwealth* v. *Wotton,* 201 Mass. 81, 84.    The trial judge correctly stated the rule relating to the measure of damages; and the requests so far as at variance therewith must be overruled.    We find no error in the admission of evidence.    The rulings requested, except so far as covered by the charge, were rightly refused; the instructions given were adapted to the evidence and were sufficient.

As the plaintiff states in its brief that it does not desire to have its exceptions considered unless the defendant's exceptions are sustained, they are treated as waived.

*Exceptions overruled.*