## JULIAN v. SINCLAIR OIL & GAS CO.

No. 20931. Feb. 20, 1934.

Rehearing Denied May 1, 1934.

Lydick, McPherren & Jordan and Logan Stevenson, for plaintiff in error.

Edw. H. Chandler and Summers Hardy, for defendant in error.

OSBORN, J. This is an action filed in the district court of Okfuskee county by Nathan Julian, a minor, by his father and next friend, Charles Julian, against the Sinclair Oil & Gas Company, a corporation, for damages for personal injuries caused by a gas explosion.

At the trial of said cause a demurrer to plaintiff's evidence was sustained, from which order this appeal has been lodged. The parties will be referred to as they appeared in the trial court.

The record shows that Charles Julian, father of the injured plaintiff, during the month of January, 1927, entered into an oral contract of employment with the defendant company. It was agreed that said Julian should receive a salary of $130 per month for performing the duties of a roustabout. A further agreement was made through the agents of the company that he would be furnished gas for his residence if he was close enough to gas to have access thereto. It was further agreed that he was to have the privilege of using a concrete cellar constructed by defendant on a lease known as the Pierce lease for the use of its employees, if he got close enough to the cellar to have access thereto.

Pursuant to said agreement the said Julian went to work for defendant January 11, 1927, and about three weeks later rented a house situated about 200 feet north of the lease known as the Pierce lease, which was being operated by defendant, on a lease known as the Gypsy lease. Julian thereafter moved his family, including the plaintiff, a boy 13 years of age, into the house on the Gypsy lease. It is shown that a one-inch gas pipe extended from the residence in a southwesterly direction toward the Pierce lease, which apparently had been connected with the gas pipe of defendant for the purpose of furnishing gas to prior occupants of the residence, but that a section of the pipe had been removed. Julian approached one Mr. Odin, a farm boss of the defendant company, with reference to securing gas for his residence, and was furnished a piece of pipe to complete the gas line and the necessary tools to install the pipe, and after making the necessary repairs to the line Julian turned the gas into his residence pursuant to the previous agreement with the defendant, and proceeded to use the gas.

The residence of the said Julian was too far removed from the concrete cellar of defendant for access thereto, but it is shown that an old abandoned cellar was situated just across the line of the Gypsy lease and on the Pierce lease operated by defendant; that the cellar was in need of repair; that the said Julian again approached the farm boss, Mr. Odin, and was granted permission to use the abandoned cellar and was furnished the necessary tools and lumber by the defendant for the repairing of the cellar; that Julian and another employee of the company performed the labor necessary to repair the cellar and it was thereby made available and fit for use by the Julian family.

On April 6, 1927, it is shown that a storm was approaching, and the Julian family attempted to take refuge in the cellar from the approaching storm; that, as they entered the cellar, plaintiff, Nathan Julian, was carrying a lantern; the cellar was full of gas, which thereupon exploded, causing severe injuries to the plaintiff, for which he seeks to recover damages in this action.

It is shown that the gas line hereinabove mentioned was laid along the west side of the cellar, and that immediately north of the cellar was laid an oil pipe line which was located on top of the gas line and crossed the same a few feet from the northwest corner of the cellar. It is asserted that the vibration of the oil pipe line caused a break in the gas line from which the gas escaped through the loose soil surrounding the same into the cellar, which was the cause of the explosion. The record discloses that the leak at this point had been noticed several days prior to the explosion, and after the explosion the line was dug up and the leaky pipe inspected by several witnesses.

Plaintiff contends that the trial court erred in sustaining a demurrer to the evidence for the reason that the evidence dis-

closes that plaintiff was an invitee upon the premises of the defendant company, and therefore the defendant owed to him the duty of keeping and maintaining the premises in a reasonably safe condition; that under the evidence adduced it is shown that defendant knew or should have known that the gas was escaping from the gas pipe line, and defendant was therefore guilty of negligence in failing to remedy the defective line. It is further urged that natural gas being a highly dangerous substance, any person handling said gas is required to use a higher degree of care and vigilance than in the ordinary affairs of life and business; and under the evidence offered by plaintiff, the question as to whether or not defendant used such care and vigilance as required under the circumstances is a question of fact which should have been submitted to the jury under the proper instructions.

The first issue for determination is whether plaintiff is an invitee or a licensee. In Atchison, T. & S. F. R. Co. v. Cogswell, 23 Okla. 181, 99 P. 923, this court said:

"The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it."

In Midland Valley R. Co. v. Littlejohn, 44 Okla. 8, 143 P. 1, it is said:

"In differentiating between invitees and licensee, an invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it."

In City of Shawnee v. Drake, 69 Okla. 209, 171 P. 727, it is said:

"One who goes upon the premises of another in a common interest or to a mutual advantage is there under the implied invitation of the owner."

See, also, Bennett v. L. & N. R. R. Co., 102 U. S. 577, 26 L. Ed. 235; A., T. & S. F. Ry. v. Jandera, 24 Okla. 106, 104 P. 339; Faurot v. Okla. Wholesale Gro. Co., 21 Okla. 104, 95 P. 463; Dowd v. C. M. & St. P. R. R. Co., 84 Wis. 105, 20 L. R. A. 527; Standsfield v. Chesapeake & P. Telep. Co., 123 Md. 120, 52 L. R. A. (N. S.) 1170; and Norris v. Hugh Nawn Cont. Co., 206 Mass. 58, 31 L. R. A. (N. S.) 623.

In Texas, O. & E. R. Co. v. McCarroll, 80 Okla. 282, 195 P. 139, it is said:

"Neither sufferance, nor permission, nor passive acquiescence is equivalent to an invitation."

In City of Grandfield v. Hammons, 100 Okla. 75, 227 P. 140, it is said:

"Without an invitation, express or implied, no duty of active care arises. Neither silence, acquiescence, nor permission, however, standing alone, is sufficient to establish an invitation. A license may thus be created, but not an invitation. The infancy of the party injured does not change the situation."

See, also, Kithcart v. Feldman, 89 Okla. 276, 215 P. 419, and Branan v. Winsatt, 298 Fed. 833.

Although it is argued that plaintiff, at the time of injury, was an invitee, in the light of the above authorities it is clear that his status is that of a licensee.

We recognize, without quoting, a great array of authorities from various jurisdictions which hold that a licensee is in no better position than a trespasser, and the property owner owes to him no responsibility except to refrain from wantonly and willfully injuring him; that a licensee takes the premises as he finds them and the property owner is not liable to him for an injury caused by a defect in the premises unless there is shown a willful, wanton, or reckless negligence, or the commission of an overt act of negligence by the property owner or some other person for whose acts the said property owner is responsible.

Some courts have recognized a substantial difference in the rights of a trespasser and a licensee, the more liberal viewpoint being expressed by the Court of Appeals of Georgia, in the case of Petree v. Davison-Paxon-Stokes, 118 S. E. 697, in which the following distinction is made:

"In the case of a trespasser:

" 'Liability arises only where the injury has been occasioned by the willful and wanton negligence of the proprietor or owner. No duty of anticipating his presence is imposed; and, as was pointed out by this court in Charleston & W. C. Ry. Co. v. Johnson, 1 Ga. App. 441, 57 S. E. 1064, the duty to use ordinary care to avoid injuring him after his presence and danger is actually known is, in point of fact, merely the duty not to injure him wantonly or willfully.'

"In the case of a licensee:

" 'There is a slightly higher duty on the part of the owner or proprietor of the premises. He must not wantonly and willfully injure the licensee; and since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and ordinary care and

diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated. (Emphasis ours.) The fundamental concept in this class of cases, as in that of trespassers, is of a liability only for willful or wanton injury; but it is usually willful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done. See Southern Ry. Co. v. Chatman, 124 Ga. 1026, 53 S. E. 692, 6 L. R. A. (N. S.) 283. To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, mantraps, and things of that character.'

"Both of the above quotations are from Mandeville Mills v. Dale, 2 Ga. App. 607, 609, 58 S. E. 1060, 1061.

" 'After the presence of the licensee is known, exactly the same acts of caution may be required of the proprietor to satisfy the legal duty as would be necessary if the licensee were invited. Indeed, we can conceive that the owner of lands on which a dangerous thing exists may be in legal duty bound to use a greater quantum of precaution in behalf of an infant licensee thereon than he would in behalf of an adult invited guest. The sum of the whole matter is included in the expression frequently enunciated that "duties arise out of circumstances." Rollestone v. Cassirer, 3 Ga. App. 161, 59 S. E. 442."

See, also, Central of Georgia Ry. Co. v. Ledbetter (Ga. App.) 168 S. E. 81.

There is some lack of harmony in the earlier decisions of this court. In the case of City of Shawnee v. Cheek, 41 Okla. 227, 137 P. 724, the duty of a property owner to a trespassing child was discussed at some length by Commissioner Thacker, in which he quotes with approval Whittaker's Smith on Negligence as follows:

" 'If A. digs a hole in his land, and B., who has a right to personal security (but no right to be on the land) falls into it, A.'s right is paramount to B.'s, and no question of negligence arises; but, if A. had permitted B. to come upon his land, the rights would be equal, and questions of negligence would arise, viz.: Whether the pit was negligently left unguarded, and whether B. was using his right of being there with care.'

" '* * * But such owner will be liable for anything in the nature of a trap upon the premises, known to him, and as to which he gives no warning to the licensee. He must not do anything to alter the premises, so as to be likely to cause injury. without notice to the licensee. Upon the whole I incline to think, with Mr. Campbell, that the owner is bound to take ordinary care with respect to a bare licensee. The question is, as I think, one of great difficulty. It is said that the licensee, being there merely for his own advantage, can only demand that slight care which a gratuitous bailee is bound to display, and so far the proposition is correct; but I am not sure, if a gratuitous bailee were to indicate a place of deposit, whether he would not be undertaking that that particular place was reasonably fit for the deposit, and if so, a similar agreement would apply to an owner who gives leave to come upon his property, viz.: That he has undertaken that his property is in some degree fit for the licensee to use. If this be so, it seems that he ought to take ordinary care. The courts, however, have distinctly held that the owner is only liable for "gross" negligence, because he is in the same position as a gratuitous bailee; but I am inclined to think the assumption is not accurate. I think that the question is only further obscured by insisting that the owner must be guilty of an act of commission to render him liable to the licensee. It may be very frequently the case that omissions are slighter neglects than acts of commission; but they may very well be the contrary, and sometimes are so. If the neglect be of a grave and obvious character, it would matter nothing whether it was an omission or commission. For instance, it would matter nothing whether a signalman omitted by grave and obvious negligence to pull the handle to direct an express upon its proper line, or whether he negligently pulled the wrong handle.' 'Where there is something done by the owner which is in the nature of a * * * wanton injury, he will be liable to an action for negligence even by a trespasser, as if an owner of premises with great recklessness shot a trespasser, or if the owner set spring guns upon his premises and injure a trespasser. But where a trespasser took shelter from a storm in a ruinous house not fenced off from the road, and a wall fell upon him and injured him, it was held that he could not recover.' 'Upon this principle it has been held that, where an owner or occupier of lands makes an excavation upon his land so near to a public highway as to be dangerous under ordinary circumstances to persons passing by, it is his duty to take reasonable care to guard such excavation, and he is liable for injuries caused, even if such persons are consciously or unconsciously straying from the way.' 'Where the excavation is at a considerable distance, no such care need be taken. What is a considerable distance, it is impossible to say, and, in truth, each case depends upon its own facts'."

Quoting again from the body of the opinion:

"We agree with the view of this author that the landowner is bound to take ordinary care with respect to a bare licensee; but we do so upon the assumption that he uses the expression 'ordinary care' as meaning such care as a person of ordinary prudence would usually exercise under the facts and circumstances in such case, although such care be slight in comparison with the care such person would usually exercise about their own affairs of more than slight importance, and, indeed, secs. 2689 and 2691, St. Okla. 1890 (secs. 2917 and 2919, Rev. Laws 1910), make it clear that the degrees of care (sec. 2688, St. Okla. 1890, same being sec. 2916, Rev. Laws 1910) and the degrees of negligence (sec. 2690, St. Okla. 1890, same being sec. 2918, Rev. Laws 1910) refer to the differences in the degrees such persons usually exercise in their own affairs of different degrees of importance, and not to any difference in degrees of care in the same case or under the same state of facts— the rule of three such degrees being thus not inconsistent with the rule that the measure of duty and test of negligence and liability is that one degree of care which a person of ordinary prudence would usually exercise under the facts and circumstances of the particular case."

In the case of Midland V. Ry. Co. v. Littlejohn, supra, it was held that the common-law rule that a landowner owes neither a trespasser nor a licensee any duty except not to injure him intentionally or willfully had not been abrogated or modified by statute, but the court followed the rule announced in City of Shawnee v. Drake, supra, defining "wantonness" as follows:

"A mere omission, involving a reckless disregard for the safety of merely technical and reasonably anticipated trespassers or bare licensees, in respect to seriously dangerous artificial condition of premises which is obvious to such owner, may amount to wantonness in him; and the artificiality, the attractiveness, and the accessibility of such dangerous place or thing thereat, together with the probability of such trespassers or licensees, the gravity of the danger, the length of time it has existed, the smallness of the cost or inconvenience and of the deprivation of beneficial use involved in eliminating same, and the reasonableness of the inference that the landowner, as a person of ordinary sensibility and prudence, knew or should have known of and, under all the facts and circumstances of the case, should have eliminated such danger, are proper considerations in determining whether there was such reckless disregard for the safety of such trespassers or bare licensees, or, in other words, whether there was wantonness."

In the case of Wilhelm v. Missouri, O. & G. Ry. Co., 51 Okla. 317, 152 P. 1088, it is said:

"The rule as stated in A., T. & S. F. Ry. Co. v. Cogswell, 23 Okla. 181, 99 P. 923, 20 L. R. A. (N. S.) 837, to the effect that a railroad company is liable only for willful and wanton injuries which may be inflicted upon a licensee, is not followed. But it is held, that, regardless of the fact that the person injured was a bare licensee upon the track of the railroad company, the company is bound to exercise that degree of care and watchfulness to protect human life that is commensurate with the probability that persons may be upon its track at any given point. And whether or not that has been done, under proper instructions, is a question for the jury."

In the case of Midland V. R. Co. v. Kellogg, 106 Okla. 237, 233 P. 716, it is said:

"In the case of a bare or a mere licensee, being one whose presence on the premises is merely tolerated, the company, as in the case of a trespasser, owes no duty except not wantonly or willfully to injure such person after his perilous position is discovered.

"In the case of a licensee, who is on the premises by invitation, express or implied, the company is required to exercise that degree of care and watchfulness, to protect against injuring such person that is commensurate with the probability that such person may be upon its track at that point."

In the more recent case of Gulf, C. & S. F. Ry. Co. v. Nail, 156 Okla. 294, 10 P. (2d) 668, quoting from Wilhelm v. M., O. & G. Ry. Co., 52 Okla. 317, 162 P. 1088, it is said:

" 'The rule as stated in A., T. & S. F. Ry. Co. v. Cogswell, 23 Okla. 181, 99 P. 923, 20 L. R. A. (N. S.) 837, to the effect that a railroad company is liable only for willfull and wanton injuries which may be inflicted upon a licensee, is not followed. But it is held that, regardless of the fact that the person injured was a bare licensee upon the track of the railroad company, the company is bound to exercise that degree of care and watchfulness to protect human life that is commensurate with the probability that persons may be upon its track at any given point. And whether that has been done or not, under proper instructions, is a question for the jury.'

"In the body of the opinion the court quoted with approval from Swift v. Staten Island R. T. R. Co., 123 N. Y. 645, 25 N. E. 378, as follows:

" ' "The legal principles applicable to the facts appearing here have been frequently enunciated by this court to the effect that, where the public have, for a long time, notoriously and constantly, been in the habit of crossing a railroad at a point not in a traveled public highway, with the acquiescence of the railroad company, such ac-

quiescence amounts to a license, and imposes a duty upon the company, as to all persons so crossing, to exercise reasonable care in the running of its trains so as to protect them from injury." ' "

The above authorities from this court are cited to show that this court has recognized that there is a marked difference between a trespasser and a licensee in so far as the liability of a landowner is concerned for injury occurring on said owner's property. It is right and proper that an owner should be liable to a trespasser only for willful and wanton injury, while it is contrary to reason and justice to apply the same rule to a licensee, without due consideration to the facts and circumstances of the particular case. In the light of the later decisions, we may now safely say that this court is committed to the rule that, under some circumstances, an owner or proprietor is charged with the duty of exercising ordinary care to avoid injuring a licensee, which is that degree of care a person of ordinary prudence would usually exercise under the facts and circumstances of the particular case. Whether or not that has been done, under proper instructions, is a question of fact for the jury. Wilhelm v. Mo., O. & G. Ry. Co., supra; Cleveland Trinidad Paving Co. v. Mitchell, 42 Okla. 49, 140 P. 419; St. Louis & S. F. R. Co. v. Elsing, 37 Okla. 333, 132 P. 483.

Plaintiff also calls attention to the fact that the injury in the instant case was caused by an explosion of natural gas, a highly dangerous substance, and cites the case of Oklahoma, G. & E. Co. v. Oklahoma Ry. Co., 77 Okla. 290, 188 P. 331, as follows:

"A higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life and business, which involve little or no risk of injury to persons or property, and in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent damage from the escape of gas commensurate with the danger which it is its duty to avoid, and if it fails to exercise this degree of care and injury results therefrom, 'the company is liable, provided the person suffering the injury either in person or in property is free from contributory negligence. While no absolute standard of duty can be prescribed, every reasonable precaution suggested by experience and the known danger of the escape of gas ought to be taken. 12 R. C. L. sec. 46, p. 905; Bellevue G. & O. Co. v. Carr, 61 Okla. 290, 161 P. 203; Bradley v. Shreveport Gas, Elec. L. & P. Co., 142 La. 49, 76 So. 230."

See, also, Koelsch v. Philadelphia Co., 152 Pa. 355, 25 Atl. 522; 18 L. R. A. 759; Hashman v. Wyandotte Gas Co., 83 Kan. 328, 111 P. 468; Sipple v. Laclede Gaslight Co., 125 Mo. App. 81, 102 S. W. 608; Greaney v. Holyoke Water Power Co., 174 Mass. 437, 54 N. E. 880; Stoner v. Pennsylvania Fuel Co., 40 Pa. Super. St. 599.

Defendant contends that, since it was not the owner of the pipes at the point where the gas escaped, it was not charged with the responsibility of inspecting said pipes and was not liable for injuries occasioned by faulty material which it did not own. As we view it, this fact alone would not absolve the company from liability. The gas which caused the damage was defendant's gas, and was turned into the pipes by defendant with knowledge on its part that it was a highly dangerous substance and subject to escape. Through the duly appointed agents and employees, defendant was charged with knowledge that its gas was being transported through the pipes in question.

In the case of Ficociello v. Spencer Gas Co., 158 N. E. 263, the Supreme Judicial Court of Massachusetts had a similar proposition before it for determination. In that case an action was brought to recover damages sustained by the plaintiff by reasons of the loss of shade and fruit trees which died of gas poisoning, and for the pollution of plaintiff's well by reason of gas escaping from the pipes alleged to be owned or controlled by the defendant. Defense was interposed that the defendant, Spencer Gas Company, was not the owner of the pipes, but that same were owned by the Worcester County Gas Company. In determining the question, the court said that the control of the pipes was the decisive question. In the opinion it is said:

"On these facts the jury would have been warranted in finding that whoever distributed gas to customers or others through the pipe lines owned by the Worcester County Gas Company had not exercised that degree of reasonable care in relation thereto which is required by law in dealing with the subject-matter of its business, having thought to the force and danger of the gaseous substance, and considering the probable consequences which would be likely to result to persons or property if proper diligence was not used in inspecting leaking pipes or in repairing leaks after they had been discovered. Smith v. Boston Gaslight Co., 129 Mass. 318; Salem v. Salem Gas Light Co., 241 Mass. 488, 441, 442, 135 N. E. 573. * * *

"It is the contention of the defendant that

a verdict should have been directed in its favor, because it was not the owner of the pipes and did not distribute gas through the pipes before June 30, 1922. The evidence reported, however, would warrant the jury in finding that the defendant and not the Worcester County Gas Company used the pipes to distribute gas to customers before June 30, 1922; and that as such user it was in control of the pipes under some arrangement with the Worcester County Gas Company; which the jury could properly find, was, at the least, that of a lessee from the not very clear testimony of the manager of the defendant when that testimony was considered in connection with the fact that it had destroyed evidence of complaints, inspections, repairs, and leaks covering the years 1921 and 1922. Assuming that the jury found that the defendant itself was in control of the distribution of the gas manufactured by it while the gas was passing through the pipes owned by the Worcester County Gas Company, to the customers of either corporation, it was bound to exercise the care which the law demands a distributor of gas shall observe, regardless of the title to the pipes which it made use of for that purpose. The motion for a directed verdict was denied rightly."

See, also, Midland Oil Co. v. Thigpen, 4 Fed. (2d) 85; Maloney v. Hayes, 206 Mass. 1, 91 N. E. 911, 28 L. R. A. (N. S.) 200; Memphis Consol. Gas & E. Co. v. Creighton, 183 Fed. 552; Castner v. Tacoma Gas & Fuel Co. (Wash.) 212 P. 283; 28 C. J. 595; and Canfield v. West Virginia Central G. Co., 80 W. Va. 731, 93 S. E. 815, L. R. A. 1918-A, 808.

In the instant case we believe that sufficient evidence was presented to justify submission to the jury the issue of whether or not defendant exercised ordinary care to avoid injury to plaintiff as a licensee. The courts have always recognized the known dangerous character of natural gas, and have carefully refrained from laying down a rule by which to measure the degree of care and caution to be exercised in the handling of said dangerous substance, and have adopted the policy that those handling natural gas should be required to exercise such a degree of care and caution as is commensurate with its known danger. Whether or not defendant exercised such care is an issue of fact which under proper instructions should be submitted to a jury.

The judgment of the trial court is reversed and the cause remanded, with directions to grant plaintiff a new trial.

RILEY, C. J., and SWINDALL, ANDREWS, and BAYLESS, JJ., concur.