MID-CONTINENT PETROLEUM CORP. et al. v. EPLEY.

No. 34291.   May 13, 1952.

Rehearing Denied Oct. 28, 1952.

Application for Leave to File Second Petition for Rehearing Denied Dec. 16, 1952.

*250 P. 2d 861.*

R. H. Wills, J. H. Crocker, J. P. Greve, J. H. Woodward, Oscar E. Swan, Jr., and Ben Hatcher, Tulsa, for plaintiffs in error.

John Barry, La Jolla, Cal. (Cannon McMahon, Oklahoma City, and Tom

Smith, Wewoka, of counsel), for defendant in error.

BINGAMAN, J. This is an action for damages for injuries resulting from the inhalation of gas, brought by Mrs. Earl Epley, as plaintiff, against Mid-Continent Petroleum Corporation, and J. J. Bowman and two other employees of Mid-Continent. The parties waived a jury. The trial court sustained a motion for judgment as to the two other employees and overruled the motion as to Mid-Continent and Bowman. Judgment was rendered in favor of plaintiff against Bowman and Mid-Continent and they jointly appeal.

Plaintiff alleged in her amended petition that she occupied a residence on a tract of land in Seminole county, on which Mid-Continent had acquired an oil and gas lease under the terms of which lease it supplied the house in which she lived with natural gas; that on January 12, 1948, while suffering from influenza, she lay down in her bedroom in front of an open flame gas heater, the gas for which was supplied by Mid-Continent; that she went to sleep and that while she was asleep the defendant, by its agents, shut off the gas flowing through the pipe which supplied her house without warning her, and thereafter turned the gas on again without notifying her, and that thereby she inhaled for some hours the gas which escaped into her house through the stove in her room, to her serious injury. Defendant in its answer, in addition to a general denial, admitted that it was operating the tract upon which plaintiff lived, and supplied the house in which she lived with gas, but denied that the gas was furnished through pipe owned by it or under its control and supervision, denied that it was a deadly and poisonous substance, and alleged that plaintiff and all other persons living in gas-using areas of the state were familiar with natural gas and knew that if unburned natural gas was permitted to fill a room occupied by a human being that he would suffer injury; they further alleged that plaintiff was guilty of negligence in leaving the open flame stove burning while she was asleep; that she was negligent in not having a vent installed to carry away fumes and odors, or in not installing a safety shut-off device to shut off the gas when there was a drop in the pressure.

Plaintiff testified that she moved into the house on the leased premises, which was owned by her father-in-law, in October 1947, and was living there in January 1948; that the weather was cold and she had been suffering with influenza for two days and was unable to get warm; that she lighted the fires in the cook stove and the oven and that the fires in the bedroom and in the living room were burning and that she lay down in front of the stove in the living room to go to sleep; that she went to sleep about 10 o'clock in the morning and later woke up and tried to get up but could not; that she crawled to the door and vomited and did not know how long she lay there before she was conscious enough to crawl out on the porch; that she knew she was gassed and that after she had sufficiently recovered in the open air she went to a regulator in the yard and cut off the gas; that she was exceedingly weak but walked across the street to a neighbor's to get them to take her to a doctor, and was taken to Okemah to a physician there who advised her to go to the hospital; that she went to the hospital and stayed there four or five days, being unable to get her breath, and that they gave her oxygen for about 51 hours. She testified that prior to that time she was strong and able-bodied, except for the attack of influenza, and that thereafter she was unable to do anything, could not even do her household work or laundry, had trouble with her lungs, especially in coughing and spitting up blood; that she was nervous and had difficulty in sleeping, and had constant pain.

A chemist, who at the request of the attorneys for plaintiff, analyzed a

specimen of the gas which was piped into the residence occupied by Mrs. Epley, testified as to the constitutent parts thereof and that it was a dangerous substance, especially if inhaled in sufficient quantities to prevent the inhalation of the proper amount of oxygen. A physician, who examined plaintiff twice, stated that her symptoms resembled that of a person who had been poisoned by carbon monoxide due too insufficient combustion of the gas, and that she could have inhaled this if the stoves in her residence had not sufficiently cooled off before the gas was turned on again. But when the conditions under which she inhaled the gas, as testified to by her, were outlined to him he testified unhesitatingly that her condition was due to the inhaling of the gas. The gas furnished to plaintiff's residence by Mid-Continent was what is known as residue gas; that is, gas which has been passed through an extraction plant, which had extracted the natural gasoline, propane and butane therefrom, and the defendant, Bowman, who was in charge of defendant's gasoline plant through which the gas was passed, and who was in charge of repairing a break in the line, testified that it was dangerous and that all persons on the line should have been notified before the gas was turned off. He further testified that he told one of the employees of the gasoline department, who shut off the gas in order to repair the break in the line, to notify all persons whom he knew to be connected to that line, but the employee did not notify Mrs. Epley. This employee testified that he knew the Epley house had been, at one time, connected with that line, but did not know who was connected with the line at the time the break was repaired. It appears that the line to which the Epley residence was connected belonged to and was under the supervision of the production department, and the foreman in charge of production testified that he had never notified persons connected with his lines when the gas was shut off; that that was not the practice on the lease. There was also testimony that some of the houses on the lease were provided with automatic cut-offs which would automatically shut off the gas lines when the pressure grew very low or the gas ceased to pass through the line.

The evidence offered by defendants tended to prove that the residue gas contained no dangerous substances and could not have been inhaled by Mrs. Epley in sufficient quantities to cause her trouble; that her trouble could have been produced by influenza and that the symptoms described by her indicated that her condition was not caused by inhaling the gas. They also produced two chemists employed by the company who contradicted the testimony of the chemist who testified for plaintiff, and testified that the residue gas contained no substance injurious or detrimental to persons inhaling it. It thus appears that the testimony on practically all points was conflicting.

Defendants contend that because plaintiff was using gas through a connection unknown to defendants, their action in turning the gas off and on without notice did not constitute negligence, because they did not know that they were interrupting plaintiff's gas supply. We are unable to agree with this contention.

We have in numerous cases held that natural gas was a dangerous substance or agency, and that a higher degree of care is required in dealing with natural gas than that required in the ordinary affairs of life and business; that where a person was injured by the escape of natural gas the question of whether or not the company handling or dealing with such gas had used that degree of care and caution which should have been used, and would have been used by a person of ordinary prudence, is a question for the jury. Margay Oil Corp. v. Jamison, 177 Okla. 433, 59 P. 2d 790; Julian v. Sinclair Oil & Gas

Co., 168 Okla. 192, 32 P. 2d 31; Oklahoma Gas & Electric Co. v. Oklahoma Ry. Co., 77 Okla. 290, 188 P. 331. In Oklahoma Natural Gas Co. v. Courtney, 182 Okla. 582, 79 P. 2d 235, we quoted from 45 C. J. 847, as follows:

"One who deals with an article which is imminently dangerous owes a public duty to all to whom it may come and who may be endangered thereby to exercise caution adequate to the peril involved, as for example, in giving notice of its dangerous character, and there need be no privity between him and the person injured."

To the same effect is 65 C. J. S., p. 559, §66, and 38 Am. Jur. pp. 662-664, §21.

There being in the record evidence that said gas was a dangerous substance when inhaled in sufficient quantities, and that it was furnished to plaintiff's residence and to the houses on the lease by the defendant, Mid-Continent, through lines owned and operated by it, we think it was a question for the trial court, the trier of the facts, a jury being waived, as to whether, in permitting connections to be made to its lines without its knowledge and of which it had no record, and without requiring the installing of cutoffs or other devices which would protect the residences connected to its lines in case the gas was shut off and turned on again without notice, the company was exercising due care in the furnishing of such dangerous substance. From the cases above cited we think that a duty was imposed upon the company and its supervising agents, in furnishing this dangerous substance, to exercise sufficient care in the furnishing thereof to prevent injury to persons or property by reason of the shutting off and turning on of the gas through its various lines, and their failure to do so would be negligence. Certainly the bare fact that they did not know that the line from the house occupied by plaintiff was connected to this particular two inch line would not relieve them of all responsibility. Whether defendants were guilty of negligence was, we think, a question of fact to be determined by a jury, or by the trial court where a jury was waived.

The defendants further contend that plaintiff did not suffer any injury as a result of breathing the unburned gas that escaped into her residence; that such injury, if any, resulted from her own neglect in going to sleep in a closed room where an unvented gas stove was burning gas from an uncertain gas supply, through a line on which there was no automatic safety regulator; that there was a failure to prove that the negligence of defendants, if they were guilty of negligence, was the proximate cause of plaintiff's injury, and that plaintiff by disconnecting her line from one line and thereafter connecting it to another line, without notice to defendants, assumed all risk incident to using gas and relieved the defendants from liability. While these are urged as separate contentions, they all go to the sufficiency of the evidence, and since we have pointed out above that the evidence was sufficient to take the cause to a jury we consider them untenable. In determining these questions the trial court, if it believed the evidence produced by plaintiff, could render a judgment in plaintiff's favor which was sufficiently supported by the evidence, and contra, if it believed the testimony of defendant's witnesses, could render a judgment for defendants. We have consistently held that where the evidence was conflicting a verdict of a jury, where reasonably supported by any competent evidence, would not be set aside by this court. Tri-State Casualty Ins. Co. v. McDuff, 192 Okla. 105, 134 P. 2d 342; Champlin Refining Co. v. Allen, 178 Okla. 101, 62 P. 2d 623.

The same rule obtains where in a case cognizable by a jury a jury is waived and the cause tried to the court. Hendrix v. Ward, 203 Okla. 173, 219 P. 2d 203; Bowser v. Bowser, 202 Okla. 97, 211 P. 2d 517; Wood v. Harris, 201 Okla. 201, 203 P. 2d 710; Strahm v. Murry, 200 Okla. 640, 199 P. 2d 603.

Defendants further contend that the trial court committed reversible error in preventing defendants' counsel from completing the cross-examination of the witness, Frampton, the chemist employed by plaintiff to analyze the gas furnished her by Mid-Continent. We have carefully examined the record and think that the trial court was justified in refusing to hear further cross-examination along the lines employed by defendants' counsel. This witness had testified that he was a graduate chemist and also a veterinarian; that he performed many chemical analyses in his laboratory at Sapulpa, and that it was impossible for him to exactly describe the apparatus employed and the methods followed in analyzing any particular substance, but that in all his analyses he carefully followed the methods particularly set forth in a standard work on chemical analysis used by him. Counsel's cross-examination as to the quality of various constituents of the gas, and as to the exact methods used by him in analyzing the gas, were long continued in spite of the witness's repeated statement that he could not answer the questions for the reason above stated, and we think the trial court was justified in refusing to prolong the cross-examination by permitting further inquiry along that line. The record shows that thereafter this witness was further cross-examined by counsel for defendant along proper lines, and that such cross-examination was not restricted by the trial court.

As its last contention defendant alleges that the trial court erred in rendering judgment against the defendants, Mid-Continent and Bowman, after having absolved the two other employees of the company from liability. But, we think, that in this case the liability of these defendants would not depend solely upon the doctrine of respondeat superior, and would not arise solely and exclusively by reason of the alleged negligence of these employees in cutting off the gas in order to repair its lines without notifying all persons connected therewith. Where there is negligence on the part of the master himself, verdicts against the master and in favor of the employees are not inconsistent, and will be permitted to stand. Apache Gas Co. v. Thompson, 177 Okla. 594, 61 P. 2d 567, and cases therein cited. In the instant case, we think the duty rested upon the defendants to see that persons connected to the lines were notified when the gas in those lines was cut off and again turned on, and that they could not escape that duty because the supervising agent, Bowman, told the employees to notify such persons as they knew were connected with such lines. It was their duty to see that such notice was given.

Defendants urge that the testimony shows that the gas line serving the house occupied by plaintiff was not connected with its line, but was connected with a private line running from such line to the house of one of its employees, and that therefore they were not liable to plaintiff. A careful examination of the testimony discloses that it conclusively establishes that plaintiff's line was not connected to such private line, but was connected to the line owned and operated by Mid-Continent.

No separate assignments of error are made by the defendant Bowman in the petition in error and all the assignments therein are joint. It follows that if the judgment is sustained as against one defendant, it must be sustained as against both. Horn v. Perry, 186 Okla. 541, 99 P. 2d 143.

Affirmed.

ARNOLD, C.J., and WELCH, CORN, DAVISON, and JOHNSON, JJ., concur. HALLEY, V. C. J., and O'NEAL, J., dissent.